**UNITED STATES ex rel. Frank ORLANDO, Relator-Appellant,**

v.

**DISTRICT DIRECTOR OF IMMIGRATION AND NATURALIZATION, Respondent-Appellee.**

No. 249, Docket No. 23337.

United States Court of Appeals Second Circuit.

Argued March 18, 1955.

Decided May 2, 1955.

William J. Mackay, Syracuse, N. Y. (Smith & Sovik, Syracuse, N. Y., on the brief), for relator-appellant.

Herman I. Branse, Acting Dist. Counsel, Immigration and Naturalization Service, Buffalo, N. Y. (Theodore F. Bowes, U. S. Atty. for Northern Dist. of New York, Syracuse, N. Y., on the brief), for respondent-appellee.

Before CLARK, Chief Judge, FRANK, Circuit Judge, and GALSTON, District Judge.

PER CURIAM.

A majority of this court is content to affirm on the reasoned and complete opinion of District Judge Brennan. Counsel has, however, particularly

pressed on us the supposed incompleteness of the record before the Examiner. These objections were not so clearly preserved in the administrative proceedings that we feel it incumbent on us to upset the obviously correct determination of the administrative tribunal, arrived at after careful evaluation of appellant's checkered history. There is no reason to suppose that what is now certified to us as the administrative record was not such or was not available to counsel at all times. This disposes of the 1939 papers, which are marked as one of the exhibits. As to the 1938 false application papers, we agree with Judge Brennan that there is good reason to believe that their nonproduction may have been waived—or so the Board might reasonably have concluded from counsel's oral argument before it. Immigration proceedings are now so harsh, as a matter of law, that perhaps the usual presumptions in favor of administrative regularity should well be mitigated somewhat to show a modicum of kindness to our hard-pressed alien visitors. Even so, we probably do no good, but may eventually prejudice other deserving cases if on the proddings of counsel's afterthoughts we search an administrative record to discover possibilities of lurking ambiguities which in any event have clearly not affected due process or the ultimate result.

FRANK, Circuit Judge (dissenting).

I dissent because of the following which Judge Brennan does not mention in his opinion. The Inquiry Officer noted that in 1934 the appellant had executed an application for a Certificate of Arrival under the name of one who had arrived in this country under circumstances more legitimate than those which surrounded appellant's arrival.[1] Partly on that basis, he denied the application for a suspension of deportation. Orlando, in his appeal to the Board of Immigration Appeals from the decision of the Inquiry Officer, argued, both in his brief and orally, that, in executing the false 1934 application, he was without fraudulent intent and "was

victimized by someone who took advantage of the appellant's distress." The Board rejected this contention, based on evidence, contained within the files of the Immigration and Naturalization Service, that again in 1938 he falsely submitted an application under the false name, and that, in a sworn statement to the Immigration Service in 1939, upon confrontation by an Immigration and Naturalization Service inspector, he admitted the falsity of his 1938 application.

Neither the 1938 application, nor the 1939 repudiation of the application, were introduced in evidence by the Hearing Officer or shown, even informally, to the appellant or his counsel; indeed, there is no evidence that the Hearing Officer was even aware of their existence. Nor is there any evidence, in the record, of the oral proceedings before the Board, that the Board confronted appellant or his counsel with this evidence, or gave him any opportunity to explain the very harmful inferences, which could be drawn from it.

I disagree with my colleagues' statements concerning these papers: As to the 1939 papers, which contain the repudiation of the earlier application, my colleagues say that it is "marked as one of the exhibits" and that "there is no reason to suppose that they were not available to counsel at all times." But the papers received their "mark as an exhibit" in 1949, five years earlier, when they were attached to the report of a Naturalization Examiner in a different proceeding. There is no mark to suggest that at any point it was made a part of the present record. This is particularly significant since other parts of the record, which were made available to counsel, were stamped, numbered and initialed by the Hearing Officer.

My colleagues also err, I think, in saying that "As to the 1938 false application papers, we agree with Judge Brennan that there is good reason to believe that their non-production may have been waived. * * *" Judge Brennan made no such finding, nor does his decision even mention the 1938 ap-

plication papers. His discussion of waiver is specifically and clearly concerned with the 1934 and the 1947 papers. Admittedly Orlando was confronted with those papers and his counsel had access to them. Judge Brennan's discussion—with which I do not take issue—relates to whether or not counsel therefore waived his right to have those papers formally introduced in evidence. That discussion has no significance with respect to the 1938 application papers which—in contrast to the 1934 and 1947 papers—were not shown to counsel at any stage in the proceedings, so far as the record shows.

I think that Orlando was entitled to know what documents constituted the record against him, to have access to those documents,[1] and to have an opportunity to rebut the inferences drawn from them. In Ohio Bell Telephone Company v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L. Ed. 1093, the Supreme Court reversed a judgment of the Supreme Court of Ohio 131 Ohio St. 539, 3 N.E.2d 475 which had affirmed an order of the state public utility commission requiring refunds by the telephone company; the commission's order had been based on valuation data in the files of the commission but never disclosed to the company. The Court, per Cardozo, J., [301 U.S. 292, 57 S.Ct. 728] wrote that the company had no "opportunity to examine them, to analyze them, to explain and to rebut them. * * * This is not the fair hearing essential to due process." More recently, the Supreme Court has reversed, without written opinion, a judgment of the Ninth Circuit, in which a Selective Service registrant was not supplied by the Hearing Officer with a full summary of adverse evidence contained in an FBI report, Simon v. United States, 75 S.Ct. 531, and another judgment of that Circuit in which the registrant was not given an opportunity

by the Appeal Board to answer an adverse recommendation of the Department of Justice before receiving his final classification, Bradley v. United States, 75 S.Ct. 532.

Of course, no one can say that Orlando, by oral testimony or other evidence, could have explained away his damaging, prior statements with sufficient persuasiveness to win a suspension of deportation from the Board. But I think he should have been afforded the opportunity to try to do so, and I would remand to find out whether that opportunity has been denied.

---

1. Unless "in the opinion of the Board making the determination the disclosure of such information would be prejudicial to the public interest, safety or securi-ty." 8 C.F.R. 244.3. But the government does not suggest that the papers here in question come within any such category.