HIROICHI and Tsugino HAMASAKI, Appellants,

v.

Herbert BROWNELL, Jr., Attorney General of the United States, Appellee.

No. 12894.

United States Court of Appeals
District of Columbia Circuit.

Argued May 22, 1956.
Decided June 28, 1956.

———◆———

Mr. David Carliner, Washington, D. C., with whom Messrs, Jack Wasserman and Edward J. Ennis, Washington, D. C., were on the brief, for appellants.

Mr. John W. Kern, III, Asst. U. S. Atty. for appellee. Messrs. Leo A. Rover, U. S. Atty. at the time record was filed, Lewis Carroll, Robert L. Toomey and Carl W. Belcher, Asst. U. S. Attys., were on the brief for appellee. Mr. Oliver Gasch, U. S. Atty., also entered an appearance for appellee.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing appellants' (plaintiffs') complaint. Appellants, husband and wife, are natives of Japan who, without visas, last entered the United States in April of 1929. The Board of Immigration Appeals, in its order dated January 9, 1953, directed that appellants depart from this country voluntarily without expense to the Government and that, if they did not so depart, the privilege of voluntary departure shall be withdrawn and appellants deported pursuant to law.

The complaint in the District Court attacks the action of the Attorney General in denying suspension of deportation. As disclosed by the pre-trial memorandum, appellants contend that the order of deportation is null and void upon the grounds (1) that their deportation is arbitrary and an abuse of discretion, considering their good moral character, their residence here of twenty-five years, and the fact that they have five American-born children; and (2) that their deportation hearing was unfair by reason of the consideration given to confidential information.

The record herein indicates that the deportation proceedings were commenced on May 16, 1945. Hearings were resumed on September 29, 1949. The delay was due, in part, to the extensive investigation by the Government which eventually disclosed perjured testimony given by the appellants during the first hearings. This perjury, which was not denied by appellants, was committed during the hearing on May 16, 1945, before the Immigration and Naturalization Service. The Hearing Officer, finding that appellants had not been persons of good moral character, due to false statements made by them concerning their true identities, ruled that appellants were subject to deportation on the grounds that they are aliens ineligible for citizenship and not entitled to enter the United States, and, further, that they are ineligible for suspension of deportation.

An appeal was taken and, on April 16, 1951, the Acting Assistant Commissioner, Adjudications Division, ordered that appellants' applications for suspension of deportation be denied, and stated:

"Both applicants have admitted the commission of perjury in connection with statements made during a hearing before this Service on May 16, 1945. At that time, the female applicant testified falsely under oath that she had entered the United States prior to 1924; that she resided in the United States during a period of time when she was in fact absent from the United States; and that certain exhibits in the government's possession did not relate to her, when in fact they did relate to her. The record reveals that the alien voluntarily supplied the correct information at a hearing on January 19, 1950. She then stated that she had made the false statements in 1945 during the course of a hearing upon a warrant of arrest issued in her case; because she then was afraid she would be deported to Japan during

the war and she did not wish to be separated from her children; and that she regrets having made the false statement.

"The male applicant has admitted the commission of perjury on May 16, 1945, when he stated to an officer of this Service at a deportation hearing held on a warrant issued in his case, that his last entry was in 1920; that he resided in the United States during a period of time when he was in fact, absent from the United States; that certain exhibits in the government's possession did not relate to him, when in fact they did relate to him.

"On January 19, 1950, the male applicant voluntarily gave the correct information concerning the date of his last entry; his residence in the United States; and the fact that the exhibits in question did refer to him. The alien stated that he regretted having made a false statement; but the statements were made at a time when he was very much afraid that he might be deported to Japan during the war as an enemy alien, and that he had great fear of separation from his children and his wife; that he did not wish to be deported to Japan as an enemy alien during the war; and that he feared there might be some danger to him if he were deported to Japan. * * * "

Thereafter, on October 15, 1951, in denying the motion for reconsideration, the Acting Assistant Commissioner made the following statement:

"Since relief from deportation is not a matter of right but of discretion, any evidence, whether or not of record, officially touching the issue may be considered. Matter of A, A–6178382, A.G.1949 (Int.Dec. 109). Confidential information in the possession of this service has been considered. His admission of the commission of perjury in 1945 has been heretofore noted. We are not satisfied from all this evidence

that the aliens' continued presence in the United States would be in the best interest of this country. Suspension of deportation will not be granted to the male alien. The factors regarding the female respondent have been covered in our previous order and there is no new persuasive reason presented to change our previous grant of voluntary departure to her."

The case was appealed to the Board of Immigration Appeals and that Board reviewed in detail the circumstances of the perjury and the membership of the male appellant in a totalitarian organization. Pointing out that the perjury committed by the appellants was "more aggravated than if they had merely given incorrect dates of entry," the Board, in its decision of January 9, 1953, stated:

"Although confronted with their own photographs and records of admission in transit and records of departure, they were brazen enough to deny that the photographs and records related to them and concocted a story about a twin brother. The respondents even testified that they had never been married. It may be noted that the respondents did not disclose the true facts regarding their last entries until nearly four years after their original hearing and that such disclosures were made after the enactment of Public Law 863, approved July 1, 1948 [62 Stat. 1206], which made Japanese eligible for suspension of deportation, and after the investigation by the United States Political Adviser in Yokohama, Japan, had disclosed that the respondents' previous testimony was untrue."

With respect to appellants' contention that confidential information was improperly used by the Board in reaching its decision, there is no indication that such information was considered. It was stipulated that the Chairman of the Board would testify that although the Board probably had the confidential file

of appellants, and it was available at the time of the decision, that information was not considered by the Board in making its decision. Cf. Jay v. Boyd, 76 S. Ct. 919, affirming the Ninth Circuit, Jay v. Boyd, 1955, 222 F.2d 820.

■ While the decision was fully supported on the completely independent ground of confessed perjury, the Board also relied on the additional fact that the male appellant was an active member of the Japan Fencing Association, a group contained in the Attorney General's list of totalitarian organizations. This was in no way contrary to applicable standards of law. The refusal to ignore the fact of this appellant's membership in said association cannot be considered prejudicial error for those exercising the dispensing power of the Attorney General. In United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 1950, 180 F.2d 489, 490, the court pointed out:

"But membership, even past membership, in an organization which the Attorney General has 'proscribed' may make an alien's continued residence prejudicial to the public weal. True, without an inquiry we cannot know whether membership in the 'Order' is prejudicial; for we cannot tell whether the Attorney General had adequate grounds for 'proscribing' it. On the other hand we cannot say that he did not; and, if the relator has the privilege of inquiring into the grounds, he has been wronged, and the writ should have gone. An alien

has no such privilege; unless the ground stated is on its face insufficient, he must accept the decision, for it was made in the exercise of discretion,' which we have again and again declared that we will not review." [Citing cases.]

Appellants cite U. S. ex rel. Accardi v. Shaughnessy, 1954, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681, as their authority for striking a proscribed listing such as was used, they argue, in the instant case. A complete reading of the case seems only to fortify the position of appellee. There the Supreme Court stated:

"It is important to emphasize that we are not here reviewing and reversing the *manner* in which discretion was exercised. If such were the case we would be discussing the evidence in the record supporting or undermining the alien's claim to discretionary relief. Rather, we object to the Board's alleged *failure to exercise* its own discretion, contrary to existing valid regulations." Id. 347 U.S. at page 268, 74 S.Ct. at page 503.

■ Certainly, it cannot be shown in the instant case that the Board "failed to exercise its own discretion, contrary to existing valid regulations."

Appellants have not been denied due process, and there is no evidence of any abuse of discretion on the part of the Attorney General. It follows that the judgment of the District Court must be affirmed.

Affirmed.