Marion Patricia **ALEXIOU**, Appellant,

v.

William P. **ROGERS**, Attorney General of
the United States, Appellee.

No. 13934.

United States Court of Appeals
District of Columbia Circuit.

Argued March 18, 1958.

Decided April 10, 1958.

Mr. David Rein, Washington, D. C.,
with whom Mr. Joseph Forer, Washington, D. C., was on the brief, for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty.,
with whom Messrs. Oliver Gasch, U. S.
Atty., and Lewis Carroll, Asst. U. S.
Atty., were on the brief, for appellee.

Before WASHINGTON, DANAHER and
BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This is an appeal from an order of the
District Court sustaining a deportation
order. The complaint alleges that appellant, an alien and native of Canada, entered this country without an immigration visa; that, although appellant is
eligible for suspension of deportation,
her application for suspension of deportation was denied, it being alleged that
the denial was arbitrary, capricious and

an abuse of discretion. It was also complained that the regulations of the Immigration and Naturalization Service were violated by substituting hearing officers. Appellee filed motion for summary judgment and appellant filed a similar motion on her behalf. Appellee's motion for summary judgment was granted, appellant's motion was denied, and the complaint was dismissed. This appeal followed.

The facts disclosed by the record are as follows: Appellant unlawfully entered the United States in 1933 from her native Canada without a visa, claiming to be a citizen of the United States and to have been born in New York City. She was divorced by her first husband, one Cox, on April 30, 1941, on the ground of desertion. She has been married to Alexiou, a United States citizen, since January 30, 1946. On October 17, 1945, prior to her marriage to Alexiou, appellant voluntarily submitted herself to the jurisdiction of the Immigration and Naturalization Service, stating that she believed she was in the United States in violation of immigration laws and requesting that deportation be suspended under the provisions of § 19(c) (2) of the Immigration Act of 1917, as amended, 8 U.S.C.A. § 1251. She stated that her deportation would result in serious economic detriment to her husband, who is a United States citizen.

Hearings were thereupon held by Presiding Inspector Larsen and thereafter, on two occasions, by Presiding Inspector Boteilho. Boteilho recommended suspension of deportation but that recommendation was rejected by the Acting Assistant Commissioner of the Immigration and Naturalization Service upon consideration of the entire case and with reference to the fact that appellant had lived with her present husband for about eight years prior to their marriage in 1946, during part of which time she was married to Cox. Appeal was taken from the order of deportation.

The Board of Immigration Appeals ordered the hearings reopened, stating that they would agree with Inspector Boteilho "but for the fact that our attention has been called to allegations that the alien is or was a member of or affiliated with the Communist party."

The hearings were reopened. Appellant denied Communist affiliations but testified that she was a member of the International Workers Order, an organization designated by the Attorney General as subversive and under Communist domination. Inspector Boteilho recommended denial of suspension of deportation. The Chief Examiner of the Immigration and Naturalization Service affirmed the denial of relief on the basis of information not a part of the open record; and, after certain intermediate proceedings, that action was approved by the Attorney General and appellant was ordered deported. She applied to the United States District Court for an order setting aside the order of deportation. The District Court set aside the order, holding that a decision based upon evidence not contained in the open record was improper. See Alexiou v. McGrath, D.C.D.C.1951, 101 F.Supp. 421. This decision was not appealed.

Thereupon, on motion of the Immigration and Naturalization Service to the Board of Immigration Appeals, an order for a hearing de novo was granted. At the reopened hearings held September 17, 1953, and October 8, 1953, Special Inquiry Officer Bloberger presided and the record of the prior proceedings and minutes were received in evidence. Denial of any connection with the Communist Party was made by appellant and, so far as appears from the record, no sufficient evidence was presented showing that she did belong to that party. Appellant, however, did admit that she had not registered under the Alien Registration Act of 1940, 8 U.S.C.A. §§ 1201, 1302, until the year 1945, stating that she was not sure whether she was in the country legally or not and was afraid she would be returned to Canada. She also admitted that on seeking private employment she had misrepresented her birth, claiming to have been born in Flint, Michigan, and in seeking a bond for private employ-

ment she had represented that she was a naturalized American citizen.

After the hearings before Special Inquiry Officer Bloberger, appellant was notified that the hearings were to be reopened for the purpose of substituting special inquiry officers, the introduction of up-to-date character reports, and to enable her "to make such representations consistent with law and regulations as the circumstances might require." At the reopened hearing held June 18, 1954, appellant was advised that Mr. Bloberger was no longer available, that Special Inquiry Officer Carney had been assigned to complete the hearing, and that Mr. Bloberger was then supervisor of Investigations of the Baltimore District Office. Objection entered by appellant's counsel to substitution of the special inquiry officer was overruled. After the conclusion of the hearing, Special Inquiry Officer Carney denied suspension of deportation but privilege of voluntary departure was granted.

Appeal was thereupon taken to the Board of Immigration Appeals. On April 15, 1955, the Board dismissed the appeal, concluding as follows:

"Prior to her entry in October 1933, respondent had been an illegal resident of the United States from 1927 to August 1933. She misrepresented her birth on several occasions in connection with her employment. She failed to register as an alien in 1940 because she feared apprehension by the Government if she registered. She was first registered in 1945.

"Suspension of deportation will not be granted. The alien is a nonquota immigrant by reason of her birth in Canada and also by reason of her marriage to a United States citizen. Congress has indicated its belief that suspension of deportation ordinarily should not be granted to a nonquota immigrant born in Canada. This fact; the manner of her entry; her representations in the United States as to United States citizenship; and her failure to reg-

ister as required by law are factors which after full consideration of the record, require our conclusion. No change will be made in the order granting voluntary departure."

Motion to reconsider was filed, urging that there was an unauthorized substitution of special inquiry officers and that this argument had been made to the Board on the original appeal but not considered or passed upon by the Board in its opinion. This motion was denied on June 10, 1955, the Board ruling:

"When the hearing was opened on June 18, 1954 counsel objected to the substitution of special inquiry officers. He was informed that Mr. Bloberger was no longer available to complete the hearing in that he had been assigned the job of supervisor of investigations of the Baltimore district office and his objection was overruled. The special inquiry officer pointed out that 8 CFR 242.53 (e) provided for the substitution of special inquiry officers if the one holding the hearing previously had become unavailable to complete his duties.

"We believe that a substitution of special inquiry officers was not only proper but required. The law forbids a special inquiry officer from conducting a proceeding in any case in which he shall have participated in investigative functions or prosecuting functions (242(a) Immigration and Nationality Act). To use a supervisor of investigations as a special inquiry officer would have been reason to question the impartiality of the hearing given the alien. We believe that Mr. Bloberger was in a true sense unavailable and that a substitution was proper. Furthermore, substitution is not important here. Our decision not to grant suspension of deportation is based not upon a question of credibility, but upon factors which are not susceptible of more than one interpretation. These factors are set forth in penultimate paragraph of our order of

April 15, 1955. They do not depend upon the veracity of the witness."

Thereupon the present action was instituted.

 Turning first to appellant's claim that the denial of her application was an abuse of discretion, we are unable to say that there is merit in this contention. The ruling was based upon adequate evidence, and we are not permitted under such circumstances to review the action of the Attorney General. Not only did appellant falsely state her citizenship, but also she violated the provisions of the Alien Registration Act. It is urged that it was error for the Attorney General, in passing upon the application for suspension of deportation filed in 1948, to take into account standards governing suspension first enacted in 1952.[1] This argument would seem to be foreclosed by United States ex rel. Hintopoulos v. Shaughnessy, 1957, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652.

Turning to the objection raised to the replacement of hearing officers, it will be noted that substitution of special inquiry officers is covered by 8 C.F.R. § 242.53(e) (1952), which provides:

"If a special inquiry officer becomes unavailable to complete his duties within a reasonable time, another special inquiry officer shall be assigned to complete the case. In such event, the new special inquiry officer shall familiarize himself with the record in the case and shall state for the record that he has done so."[2]

We do not agree with appellant that the section quoted provides that un-

availability arises only under such circumstances as "death, illness or possibly leaving the agency entirely." It is noted that no objection was made to the previous substitution of special inquiry officers, and no reason appears why the further substitution stands in a different category. There is no showing that any prejudice or harm resulted to appellant by reason of the substitution.

Affirmed.

---

1. This has reference to that part of the decision of April 15, 1955, which pointed out that "Congress has indicated its belief that suspension of deportation ordinarily should not be granted to a nonquota immigrant born in Canada." This statement of congressional policy was first enacted in the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1254 (b)), wherein it is provided: " * * * The provisions of this subsection relating to the granting of suspension of deportation shall not be applicable to any alien who is a native of any country contiguous to the United States or of any adjacent island, unless he establishes to the satisfaction of the Attorney General that he is ineligible to obtain a nonquota immigrant visa."

2. The new special inquiry officer did familiarize himself with the record and did state for the record that he had done so.