Petition of MOY WING YIN for a writ
of habeas corpus.

UNITED STATES of America ex rel.
MOY WING YIN, Relator,

v.

John L. MURFF, District Director of the
Immigration and Naturalization Serv-
ice for the New York District, Respond-
ent.

United States District Court
S. D. New York.

Nov. 7, 1958.

Samuel Bernstein, New York City, for relator.

Arthur H. Christy, U. S. Atty., New York City, Charles Hartenstine, Jr., New York City, of counsel, for respondent.

BICKS, District Judge.

The relator brings this habeas corpus proceeding to test the validity of the Attorney General's order of deportation and denial of his application, under § 244(a) (1) of the Immigration and Nationality Act, 8 U.S.C.A. § 1254(a) (1), for suspension of deportation.

Relator, a native and national of China, entered the United States on May 17, 1927, under the name of Soo Hoo Wing Yin upon the false claim that he was the citizen son of a native-born United States citizen, Soo Hoo Shu Sing.[1] He left the United States and returned on or about May 1936 on the same false premise. At the time of both entries, the relator intended to remain in the United States indefinitely, though not in possession of a valid immigration visa.

Deportation proceedings were instituted during the course of which relator, represented by counsel of his choice and assisted by an interpreter, testified under oath that (a) he is a native and citizen of China; (b) he was admitted to this country in 1927 and again in 1936 under a claim, which he then knew to be false, to wit: that he was the son of a native United States citizen and that he was, therefore, a United States citizen; (c) when he last came to the United States he was not in possession of a valid immigration visa; (d) he intended to remain here indefinitely; (e) he used the name Soo Hoo Wing Yin from the time of his first entry until about October 12, 1956; and (f) on October 5, 1956, he falsely testified under oath before investigators of the Immigration and Naturalization Service that (i) he was the son of a United States citizen; (ii) he married in 1927,[2] and (iii) four children were born of this marriage.[3] The special inquiry officer found that relator was deportable and denied his application for suspension of deportation on the ground that relator's perjurious testimony rendered him ineligible for such relief and further, that he "would not be inclined to exercise discretion in his [relator's] favor even if he were shown to be technically eligible." These conclusions were affirmed by the Board of Immigration Appeals. The Board denied an application for reconsideration. Thereafter and on June 20, 1958, the Board granted relator's motion for oral argument in connection with a motion to reopen the proceeding on the ground of newly-discovered evidence. Upon this argument, counsel for the relator stated that on October 12, 1956, investigators of the Immigration and Naturalization Service interviewed relator and informed him that "if he would admit his alienage, and retract his previous testimony * * * they would make sure that he would be given consideration, so that he would not be deported" and that relator in reliance "on these promises and representations, and without benefit of an attorney, at this particular investigation or investigative inquiry, recanted his previous testimony." The said motion to reopen the proceedings was denied.[4]

1. Relator later admitted that his father was a citizen of China and that Soo Hoo Shu Sing was an uncle.

2. At the deportation hearing, relator admitted that he did not marry until 1933.

3. At the deportation hearing, relator admitted he had but one child. This child and the relator's wife live in Hong Kong.

4. Relator also applied to the Attorney General for suspension of deportation pursuant to § 243(h) of the Immigration and Nationality Act, on the ground that deportation to China or Hong Kong would subject him to physical persecution. After a full hearing on the merits the special inquiry officer recommended that the application be denied on the

■ The relator upon entry was an immigrant who did not possess an unexpired immigration visa in accordance with the law then in effect and as such was excludable. See § 13(a) of the Immigration Act of 1924, 8 U.S.C. § 213(a) (1946 ed.).* By reason thereof he is now deportable.[5] 8 U.S.C.A. § 1251(a)(1). See also Paris v. Shaughnessy, D.C. S.D.N.Y.1956, 138 F.Supp. 36, affirmed, 2 Cir., 1957, 247 F.2d 1, certiorari denied, 1958, 355 U.S. 926, 78 S.Ct. 384, 2 L.Ed. 2d 357.

■ Relator's counsel urges that the deportation order is "not supported by any evidence." What he overlooks, however, is that his client's admissions at the deportation hearings were sufficient in themselves to provide the basis for a finding of deportability. Medeiros v. Brownell, 1957, 99 U.S.App.D.C. 396, 240 F.2d 634; United States ex rel. Avramovich v. Lehmann, 6 Cir., 1956, 235 F.2d 260, certiorari denied, 1957, 355 U.S. 905, 78 S.Ct. 328, 2 L.Ed.2d 250; Harris v. United States Department of Justice, D.C.E.D.Mich.1958, 161 F.Supp. 59. Cf. 8 C.F.R. § 242.16(b) (1958).

■ In order to be eligible for suspension of deportation under § 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C.A. § 1254(a)(1), the alien must bear the burden of showing, among other things, that during the seven-year period immediately preceding the application for such relief he was and still is a person of good moral character. Ap-

plication of Orlando, D.C.N.D.N.Y.1954, 131 F.Supp. 485, affirmed United States ex rel. Orlando v. District Director of I. & N. Service, 2 Cir., 222 F.2d 537, certiorari denied, 1955, 350 U.S. 862, 76 S.Ct. 103, 100 L.Ed. 764.[6] Under the Immigration and Nationality Act of 1952 [8 U.S.C.A. § 1101(f)] Congress specified certain conduct which precludes a finding of good moral character. See United States ex rel. Zacharias v. Shaughnessy, 2 Cir., 1955, 221 F.2d 578; Dickhoff v. Shaughnessy, D.C.S.D.N.Y.1956, 142 F. Supp. 535; Evans v. Murff, D.C.Md.1955, 135 F.Supp. 907. See also S.Rep. No. 1137, 82d Cong., 2d Sess. p. 6 (1952); H.R.Rep. No. 2096, 82d Cong., 2d Sess. p. 128 (1952) (Conference Report). For the purposes of the Act relator is not a person of good moral character since admittedly he, during the critical time period, gave false testimony for the purpose of obtaining benefits under the Act [8 U.S.C.A. § 1101(f)(6)] and also by his own admission he committed acts during said period which "constitute the essential elements" of a crime involving moral turpitude [8 U.S.C.A. §§ 1101(f)(3), 1182(a)(9)], i. e., perjury.[7] See United States ex rel. Boraca v. Schlotfeldt, 7 Cir., 1940, 109 F.2d 106; United States ex rel. Karpay v. Uhl, 2 Cir., 70 F.2d 792, certiorari denied, 1934, 293 U.S. 573, 55 S.Ct. 85, 79 L.Ed. 671; United States ex rel. Majka v. Palmer, 7 Cir., 1933, 67 F.2d 146. Cf. Bisaillon v. Hogan, 9 Cir., 1958, 257 F.2d 435, certiorari denied 79 S.Ct. 112.

---

ground that relator failed to establish that he would be subjected to physical persecution if so deported. This recommendation was approved by the Acting Regional Commissioner on June 3, 1958.

Apparently relator does not now challenge the validity of this determination.

* Now 8 U.S.C.A. § 1181(a). [Ed. Note.]

5. At the hearing counsel for the relator was asked:

"Q. The respondent [relator herein] is admitting deportability. Is he making this admission with your consent?

"A. He is."

The relator is now represented by other counsel.

6. The statute does not contemplate that all aliens who meet the minimum legal standards will be granted suspension. Suspension of deportation is a matter of discretion and administrative grace. United States ex rel. Hintopoulos v. Shaughnessy, 1957, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652.

7. At the deportation hearing, the examining officer defined perjury for the petitioner's benefit. This is the usual administrative practice. See Tandaric v. Robinson, 7 Cir., 1958, 257 F.2d 895; Matter of K——, A-7922461, 10/31/57, Int.Dec. No. 897.

The alleged "newly discovered evidence", which relator sought to produce in the event that the proceedings were reopened and the refusal to receive the same is the basis for relator's contention that he was deprived of due process. Assuming arguendo that he admitted alienage in reliance upon the alleged inducements and representations of investigators of the Service,[8] such reliance would not render the false testimony he gave any the less perjurious. No claim has been made, and indeed, none properly can be made, that the alleged conduct of the investigators constituted a waiver of the immigration laws or created an estoppel against the Government.[9] Cf. United States ex rel. Lapides v. Watkins, 2 Cir., 1948, 165 F.2d 1017; United States ex rel. Sage v. District Director of Immigration, 7 Cir., 1936, 82 F.2d 630. Accordingly, the Board did not err in finding that the relator was statutorily ineligible for suspension of deportation.

The Board indicated that it would be disinclined to grant suspension of deportation even if petitioner was eligible therefor.[10] Mindful of the limited scope of judicial review of an administrative order denying suspension of deportation,[11] and confronted with a record indicating that relator's immediate family does not live in the United States,[12] that he swore falsely as to his citizenship, the date of his marriage, and the number of his progeny,[13] the Attorney General's determination that this was not a proper instance for granting the discretionary relief sought, cannot be characterized as arbitrary.

While deportation of an alien who has resided in this country, albeit illegally, for upwards of 30 years may seem perhaps unduly harsh, the mandate of the law is clear. Although urged to do so,[14] the Congress did not carry over into the 1952 Act a statute of limitations for deportation proceedings. See Evans v. Murff, supra. "It is well established that the expulsion of aliens is a sovereign power * * * to be regulated by the legislative department by such statutes

---

8. The Board, in its decision of August 4, 1958, observed: "The respondent's [relator's] testimony at the hearing held on October 30, 1956 (p. 8) seems to belie his present claim. He then testified that he revealed the truth about himself because his conscience bothered him. He was then represented by counsel and no exceptions along this line were then raised."

9. Apparently the Service did publicize the availability of benefits under Section 244 (a) (1) of the Immigration and Nationality Act in order to encourage aliens who could qualify thereunder and who would voluntarily disclose their illegal entries and immigration statuses, to initiate appropriate action before the statute, by its very terms, expired on December 24, 1957.

10. It stated: "Finally, there is no merit to the claim that there has been a timely recantation in this case. It is clearly established that we are not here concerned with an innocent mistake. On this record, and at this stage of the proceedings, the respondent cannot purge himself by admitting to a fraud which permeates his record with the Government for a period of approximately 30 years."

11. United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 1950, 180 F.2d 489. We look only to see whether there has been a clear abuse of discretion, Asikese v. Brownell, 1956, 97 U.S.App.D.C. 221, 230 F.2d 34, or a failure to exercise it at all. United States ex rel. Accardi v. Shaughnessy, 1954, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681; Evans v. Murff, supra.

12. Cf. Melachrinos v. Brownell, 1956, 97 U.S.App.D.C. 229, 230 F.2d 42. See note 3 supra.

13. Cf. Tandaric v. Robinson, supra; Alexiou v. Rogers, 1958, 103 U.S.App.D.C. 79, 254 F.2d 782; Hiroichi Hamasaki v. Brownell, 1956, 98 U.S.App.D.C. 309, 235 F.2d 536.

14. See "Whom We Shall Welcome", Report of the President's Commission on Immigration and Naturalization, pp. 197–198 (1953).

as it deems wise policy to require." United States ex rel. Zapp v. District Director of Immigration & Naturalization, 2 Cir., 1941, 120 F.2d 762, 764. See also United States ex rel. Avramovich v. Lehmann, supra.

Accordingly, the writ is dismissed and the relator is remanded to the custody of the respondent.

So ordered.