UNITED STATES of America ex rel. Anastasios HINTOPOULOS and Elizabeth Hintopoulos, Relators,

v.

Edward J. SHAUGHNESSY, District Director of Immigration and Naturalization at the Port of New York, Respondent.

United States District Court
S. D. New York.

Aug. 1, 1955.

Jay Nicholas Long, of New York City, for relators.

Lloyd F. MacMahon, U. S. Atty., New York City, for respondent, Lester Friedman, Immigration and Naturalization Service, Dept. of Justice, New York City, of counsel.

DAWSON, District Judge.

This matter, brought up by the issuance of a writ of habeas corpus, involves the question as to whether the denial to petitioners of suspension of deportation by the Attorney General was an abuse of discretion by the Attorney General.

The undisputed facts show that the relators are citizens of Greece who are now illegally in the United States. They last entered the United States in 1951 as members of a crew of a Greek steamship. They were granted shore leave for the period of time the vessel on which they arrived remained in port, but in no event to exceed twenty-nine days. They failed

to depart from the United States before the expiration of their period of temporary admission and did not apply for any extension of this period.

In April, 1952, warrants of arrest were duly issued by the District Director of Immigration and Naturalization charging that the relators were unlawfully in the United States and subject to deportation. A hearing was accorded to the relators. The Hearing Officer made his decision, finding both relators deportable and denying their applications for suspension of deportation. An appeal was taken to the Board of Immigration Appeals, and that Board, on March 18, 1954, made an order denying their applications for suspension of deportation and dismissing their appeal. They were given permission to depart voluntarily from the United States.

Relators did not depart from the United States, but on April 19, 1954, filed a motion addressed to the Board of Immigration Appeals requesting that the proceedings be re-opened and their applications for suspension of deportation reconsidered. On May 5, 1954, the Board of Immigration Appeals denied relators' motion. They were given until August 20, 1954 within which to avail themselves of the privilege of voluntary departure. On May 11, 1955, they submitted another motion addressed to the Board of Immigration Appeals asking that the administrative proceedings be re-opened and their applications for suspension of deportation reconsidered. These motions were denied by the Board of Immigration Appeals on June 3, 1955.

On July 12, 1955, relators submitted an application that their deportation be stayed on the ground that the deportation could possibly endanger the life of the relator Elizabeth Hintopoulos and would involve "the possible loss of the unborn child with whom she is now in the fifth month of pregnancy". On July 13, 1955, this relator was examined by a surgeon of the United States Public Health Service who certified that she was able to travel without danger to life; that she required no immediate medical treatment, and that she could travel aboard a vessel having a physician aboard. Thereupon, relators' application for a stay of deportation was denied and they were taken into custody for deportation.

Relators do not deny that they are illegally in the Country and are subject to deportation. They urge, however, that they were eligible for suspension of deportation under the provisions of § 19(c) of the Immigration Act of 1917, as amended,[1] and that the refusal of the Attorney General to suspend deportation under the provisions of this statute was an abuse of discretion.

The respondent admits that relators came within the category of the persons for whom the Attorney General might suspend deportation. Respondent urges, however, that the suspension of deportation under the provisions of this statute is purely a matter of the discretion of the Attorney General; that the Attorney General exercised his discretion and did not exercise it capriciously or arbitrarily.

■ It is well established that the Courts may not review the exercise of such discretion by the Attorney General, and that they may interfere only where there has been a clear abuse of discretion or a clear failure to exercise discretion. In such cases, the Court can do no more than to require that the discretion be properly exercised. United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 1950, 180 F.2d 489; United States ex rel. Adel v. Shaughnessy, 2 Cir., 1950, 183 F.2d 371; United States ex rel. James v. Shaughnessy, 2 Cir., 1953, 202 F.2d 519, certiorari denied 345 U.S. 969, 73 S.Ct. 1112, 97 L.Ed. 1508.

· The administrative record which was submitted in connection with this proceeding shows that the Board of Immigration Appeals recognized that relators had established the statutory requirements for discretionary suspension · of

---

1. Now Immigration and Nationality Act, §§ 1254(a) (1, 2), 1351.

deportation under § 19(c) of the Immigration Act of 1917, as amended, and that the Board recognized that the deportation of relators might result in "serious economic detriment" to their citizen minor child. After considering these matters, however, the Board denied the suspension of deportation as a matter of administrative discretion.

Prior to the final determination of this matter by the Board of Immigration Appeals, Congress had enacted the Immigration and Nationality Act of 1952. Under the 1917 Act, as amended, the applicant for suspension of deportation had to show "serious economic detriment". Under the 1952 Act, the applicant would have to show that the deportation would "result in exceptional and extremely unusual hardship to the alien or to his spouse, parent or child", 8 U.S.C.A. § 1254(a) (1).

In the consideration of the 1952 Act in Congress, this change in the test to be applied to suspension of deportation was considered. The Senate Judiciary Committee, in its report on the Bill which subsequently became law, said:

"The bill accordingly establishes a policy that the administrative remedy should be available only in the very limited category of cases in which the deportation of the alien would be unconscionable. Hardship or even unusual hardship to the alien or to his spouse, parent, or child is not sufficient to justify suspension of deportation." [2]

The Attorney General, in exercising his discretion, could take into account the new standard which was laid down by Congress. The new standard was referred to in the decision of the Board of Immigration Appeals of May 5, 1954. The Board in that opinion recognized that the deportation might result in "serious economic detriment to the American born infant child", but concluded that this was not alone enough to warrant suspension of deportation. The Board pointed out that the child at the time of the decision in 1954 was about two and one-half years old; that the parents had been in the United States for a period of less than three years; that both had arrived in this Country as seamen; that they have no other dependants or close family ties here, and that the male relator may be able to obtain work as a Greek seaman and earn about $85 per month.

Under the circumstances, it appears clear that the Board of Immigration Appeals, acting for and on behalf

---

2. The Senate Judiciary Committee stated in Senate Report No. 1137, with reference to the Bill which subsequently became law, as follows:

"The term 'exceptional and extremely unusual hardship' requires some explanation. The committee is aware that in almost all cases of deportation, hardship and frequently unusual hardship is experienced by the alien or the members of his family who may be separated from the alien. The committee is aware, too, of the progressively increasing number of cases in which aliens are deliberately flouting our immigration laws by the processes of gaining admission into the United States illegally or ostensibly as non-immigrants but with the intention of establishing themselves in a situation in which they may subsequently have access to some administrative remedy to adjust their status to that of permanent residents. The practice is grossly unfair to aliens who await their turns on the quota waiting lists and who are deprived of their quota numbers in favor of aliens who indulge in the practice. This practice is threatening our entire immigration system and the incentive for the practice must be removed. Accordingly, under the bill, to justify the suspension of deportation the hardship must not only be unusual but must also be exceptionally and extremely unusual. The bill accordingly establishes a policy that the administrative remedy should be available only in the very limited category of cases in which the deportation of the alien would be unconscionable. Hardship or even unusual hardship to the alien or to his spouse, parent, or child is not sufficient to justify suspension of deportation. To continue in the pattern existing under the present law is to make a mockery of our immigration system." (Quoted in "Commentary on the Immigration and Nationality Act" by Walter M. Besterman, Legislative Assistant, Committee on the Judiciary, House of Representatives, Vol. 8 U.S.C. p. 67).

of the Attorney General, exercised its discretion; that it did not capriciously exercise its discretion or abuse its discretion. Under the circumstances, this Court has no power to review this exercise of discretion by the Attorney General.

The writ of habeas corpus is dismissed. So ordered.