UNITED STATES ex rel. HINTOPOULOS et ux. v.
SHAUGHNESSY, DISTRICT DIRECTOR,
IMMIGRATION AND NATURALIZA-
TION SERVICE.

No. 205. Argued March 4, 1957.—Decided March 25, 1957.

*Jay Nicholas Long* argued the cause and filed a brief for petitioners.

*Maurice A. Roberts* argued the cause for respondent. On the brief were *Solicitor General Rankin, Assistant Attorney General Olney, John F. Davis* and *Isabelle Cappello.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

This is a habeas corpus proceeding to test the validity of an order of the Board of Immigration Appeals denying petitioners' request for suspension of deportation.

Petitioners are husband and wife, both aliens. Prior to 1951 both worked as seamen on foreign vessels. In July 1951 the wife lawfully entered the United States as a crew member of a ship in a United States port. Being pregnant, she sought medical advice; subsequently she decided in the interest of her health to stay ashore. A month later, on the next occasion his ship arrived in the United States, her husband joined her; he also failed to leave on the expiration of his limited lawful stay.[1] In November 1951 their child was born; the child is, of course, an American citizen by birth. In January 1952 petitioners voluntarily disclosed their illegal presence to the Immigration Service and applied for suspension of deportation under § 19 (c) of the Immigration Act of 1917, which provides, in part:

> "In the case of any alien . . . who is deportable under any law of the United States and who has proved good moral character for the preceding five years, the Attorney General may . . . suspend

---

[1] Under certain conditions alien crewmen are permitted to enter the United States for periods not exceeding 29 days. See 8 U. S. C. §§ 1281–1287.

deportation of such alien if he is not ineligible for naturalization . . . if he finds (a) that such deportation would result in serious economic detriment to a citizen or legally resident alien who is the spouse, parent, or minor child of such deportable alien . . . ." [2]

Deportation proceedings were instituted in May 1952 and a hearing was held. On the undisputed facts both aliens were found deportable. As to the issue of suspension of deportation, the Hearing Officer, while finding petitioners eligible for such relief, denied the request, stating as follows:

"Both respondents have applied for suspension of deportation on the ground of the economic detriment that would befall their minor son in the event they were deported. . . . Both disclaim having a criminal record anywhere and both allege that they have been persons of good moral character. Evidence of record would tend to corroborate their testimony in this respect. Their only income is from the employment of the male respondent on two jobs . . . . Their joint assets consist of savings in the sum of about $500 and their furniture and other personal property which they value at $1500. While it would seem that their son . . . would suffer economically if his parents should be deported, it is not believed that as a matter of administrative discretion the respondents' applications for suspension of deportation should be granted. They have been in the United States for a period of less than one year. They have no relatives in this country other than each other and their son. To grant both this form of relief upon the accident of birth in the United States of their son

---

[2] 8 U. S. C. (1946 ed., Supp. V) § 155 (c).

would be to deprive others, who are patiently await-
ing visas under their already oversubscribed quotas.
It is noted also that neither respondent reported his
and her presence in the United States at any time
until January, 1952 when they filed applications for
suspension of deportation just two months after the
birth of their child. . . ."

The Board of Immigration Appeals heard petitioners'
appeal, and on March 18, 1954, upheld the Hearing Offi-
cer's recommendation and denied suspension of deporta-
tion.  The Board stated:

"It is obvious that the American citizen infant child
is dependent upon the alien parents for economic
support, care and maintenance.  Documentary and
other evidence establish good moral character for the
requisite period.  The aliens have no connection
with subversive groups.

.  .  .  .  .

"As stated above, we have, in the instant case, a
family consisting of two alien parents illegally resid-
ing in the United States and one American citizen
child, age about two and one-half years.  These
respondents have been in the United States for a
period of less than three years.  Both arrived in this
country as seamen.  They have no other dependents
or close family ties here.  The record indicates that
the male respondent may be able to obtain work as
a Greek seaman and earn about $85 monthly.

"Notwithstanding the fact that . . . the deporta-
tion of these respondents would result in a serious
economic detriment to an American citizen infant
child, the granting or withholding of maximum dis-
cretionary relief depends on the factors and merits
in each individual case, and is a matter of adminis-

trative discretion. We have carefully examined the facts and circumstances in the instant case and we find that the granting of the maximum relief is not warranted by the record in the case. . . ."

Petitioners thereupon moved for reconsideration. On May 5, 1954, the Board denied the motion, stating:

"Counsel's motion sets forth no matters of which we were unaware at the time our previous decision was rendered. It is crystal clear that Congress intended to greatly restrict the granting of suspension of deportation by the change of phraseology which was used in Section 244 (a) of the Immigration and Nationality Act [of 1952] as well as the Congressional comment at the time this provision was enacted.[3] We indicated in our previous order that the deportation of the respondents would result in

---

[3] Section 244 of the 1952 Act, 8 U. S. C. § 1254 (a), provides, in pertinent part: "As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation . . . in the case of an alien who—

.        .        .        .        .

"(5) . . . has been physically present in the United States for a continuous period of not less than ten years . . . and proves that during all of such period he has been and is a person of good moral character; has not been served with a final order of deportation . . . and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen or an alien lawfully admitted for permanent residence."

A report of the Senate Judiciary Committee on this provision states: "The bill accordingly establishes a policy that the administrative remedy should be available only in the very limited category of cases in which the deportation of the alien would be unconscionable. Hardship or even unusual hardship to the alien or to his spouse, parent, or child is not sufficient to justify suspension of deportation. . . ." S. Rep. No. 1137, 82d Cong., 2d Sess. 25. (Footnote not in original.)

a serious economic detriment to their citizen minor child, and we do not question that the respondents have established the statutory requirements for suspension of deportation . . . .

.         .         .         .         .

"Upon our further review of the cases of the two respondents, we adhere to our previous decision that suspension of deportation should be denied as a matter of administrative discretion . . . ."

Taken into custody for deportation, petitioners instituted the present habeas corpus proceeding, alleging that the Board abused its discretion in denying their application for suspension of deportation. The District Court dismissed the writ, 133 F. Supp. 433, and the Court of Appeals, one judge dissenting, affirmed, 233 F. 2d 705. We granted certiorari. 352 U. S. 819.

We do not think that there was error in these proceedings. It is clear from the record that the Board applied the correct legal standards in deciding whether petitioners met the statutory prerequisites for suspension of deportation. The Board found that petitioners met these standards and were eligible for relief. But the statute does not contemplate that all aliens who meet the minimum legal standards will be granted suspension. Suspension of deportation is a matter of discretion and of administrative grace, not mere eligibility; discretion must be exercised even though statutory prerequisites have been met.[4]

Nor can we say that it was abuse of discretion to withhold relief in this case. The reasons relied on by the Hearing Officer and the Board—mainly the fact that petitioners had established no roots or ties in this country— were neither capricious nor arbitrary.

---

[4] *United States ex rel. Kaloudis* v. *Shaughnessy,* 180 F. 2d 489; *United States ex rel. Adel* v. *Shaughnessy,* 183 F. 2d 371. Cf. *Jay* v. *Boyd,* 351 U. S. 345.

Petitioners urge that the Board applied an improper standard in exercising its discretion when, in its opinion on rehearing, it took into account the congressional policy underlying the Immigration and Nationality Act of 1952, the latter being concededly inapplicable to this case. We cannot agree with this contention. The second opinion makes clear that the Board still considered petitioners eligible for suspension under the 1917 Act[5] and denied relief solely as a matter of discretion. And we cannot say that it was improper or arbitrary for the Board to be influenced, in exercising that discretion, by its views as to congressional policy as manifested by the 1952 Act. Section 19 (c) does not state what standards are to guide the Attorney General in the exercise of his discretion. Surely it is not unreasonable for him to take cognizance of present-day conditions and congressional attitudes, any more than it would be arbitrary for a judge, in sentencing a criminal, to refuse to suspend sentence because contemporary opinion, as exemplified in recent statutes, has increased in rigour as to the offense involved. This conclusion is fortified by the fact that § 19 (c) provides for close congressional supervision over suspensions of deportation. In every case where suspension for more than six months is granted a report must be submitted to Congress, and if thereafter Congress does not pass a concurrent resolution approving the suspension of deportation, the alien must then be deported.[6] In other words, every such

---

[5] Petitioners would clearly be ineligible for suspension under the 1952 Act. See n. 3, *supra*.

[6] The statute provides: "If the deportation of any alien is suspended under the provisions of this subsection for more than six months, a complete and detailed statement of the facts and pertinent provisions of law in the case shall be reported to the Congress with the reasons for such suspension. These reports shall be submitted on the 1st and 15th day of each calendar month in which Congress is in session. If during the session of the Congress at which a case is reported, or

suspension must be approved by Congress, and yet petitioners would have us hold that the Attorney General may not take into account the current policies of Congress in exercising his discretion. This we cannot do.

There being no error, the judgment is affirmed.

*Affirmed.*

MR. JUSTICE WHITTAKER took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

This case, on its face, seems to be an instance of a deportation which would "result in serious economic detriment to a citizen," as those words are used in § 19 (c) of the Immigration Act of 1917.

The citizen is a five-year-old boy who was born here and who, therefore, is entitled to all the rights, privileges, and immunities which the Fourteenth Amendment bestows on every citizen. A five-year-old boy cannot enjoy the educational, spiritual, and economic benefits which our society affords unless he is with his parents. His parents are law-abiding and self-supporting. From this record it appears that they are good members of the community. They do not seem to have done anything illegal or antisocial that should penalize their American son.

---

prior to the close of the session of the Congress next following the session at which a case is reported, the Congress passes a concurrent resolution stating in substance that it favors the suspension of such deportation, the Attorney General shall cancel deportation proceedings. If prior to the close of the session of the Congress next following the session at which a case is reported, the Congress does not pass such a concurrent resolution, the Attorney General shall thereupon deport such alien in the manner provided by law. . . ." 8 U. S. C. (1946 ed., Supp. V) § 155 (c).

It would seem, therefore, that the maintenance of this young American citizen in a home in America is the way to effectuate the policy of the 1917 Act.

The Board did not treat the case that way. Instead it imported into the 1917 Act the standard prescribed by the 1952 Act, which concededly is inapplicable here. That was the error which led Judge Frank to dissent below. 233 F. 2d 705, 709, 710. I think Judge Frank was right. Prevailing congressional policy on the approval or disapproval of suspension orders in nowise affects the standards prescribed for administrative action under the 1917 Act.

The Board erroneously followed irrelevant standards instead of exercising its discretion under the applicable statute, *viz.* § 19 (c) of the 1917 Act.