**Basilio FUGIANI, Appellant,**

v.

**Bruce G. BARBER, District Director Immigration and Naturalization Service, San Francisco, California, Appellee.**

**No. 15162.**

United States Court of Appeals
Ninth Circuit.

July 11, 1958.

Pope, Circuit Judge, dissented.

Jackson & Hertogs, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before BONE, POPE and FEE, Circuit Judges.

BONE, Circuit Judge.

Fugiani appeals from an order of the District Court dismissing his petition for review. Appellant is a native and citizen of Italy. He was admitted at New York to the United States as a non-immigrant (visitor) under Section 3(2) of the Immigration Act of 1924.[*] On March 28, 1950, appellant married a citizen of the United States. On June 25, 1951, a warrant of arrest was issued charging that appellant was in the United States in violation of law in that after his admission as a visitor he had remained in the United States for a longer time than permitted under the law[1] or regulations made thereunder.

A hearing was conducted on September 23, 1952, before a Special Inquiry Officer attached to the San Francisco district office of the Immigration and Naturalization Service. Appellant applied for suspension of deportation and, as an alternative form of relief, voluntary departure from the United States. At the conclusion of the hearing the Special Inquiry Officer found appellant

---

[*] Now 8 U.S.C.A. § 1101(a) (15) (B).

[1.] Section 14 of the Immigration Act of 1924, 8 U.S.C.A. § 214: "Any alien who at any time after entering the United States is found * * * to have remained therein for a longer time than permitted under this chapter or regulations made thereunder, shall be taken into custody and deported in the same manner as provided for in sections 155 and 156 of this title * * *." Now 8 U.S.C.A. § 1251(a) (1, 2, 9).

eligible for voluntary departure from the United States.[2]

On September 24, 1952, the hearing was reopened and the Special Inquiry Officer entered an order granting the appellant the additional privilege of pre-examination.[3] No appeal was taken from this order and a formal order granting voluntary departure and pre-examination was filed on September 28, 1952.

A visa petition was submitted for appellant by his wife; it was approved by the San Francisco District Office. By letter dated November 25, 1952, the United States Consulate General at Vancouver, British Columbia, notified the appellant that no further action would be taken in his case until he submitted documentary evidence of the termination of a prior marriage in Germany to a German girl.

Appellant communicated with his sister residing in his native city of Fabriano, Province of Ancona, Italy. She informed appellant that by the official records of the Township of Fabriano appellant was married in Berlin, Germany, in 1945, and a record of the marriage was forwarded to Fabriano, Italy, on March 20, 1950, by the Foreign Ministry at Rome. From the briefs submitted it would seem that in Italy one's birth record is annotated or amended to show marriage, and that his birth record did not show any marriage at the time he entered the United States on February 22, 1950. Appellant commenced proceedings in Italy to annul this claimed marriage.[4]

On July 29, 1953, a Special Inquiry Officer of the Immigration and Naturalization Service in San Francisco entered an order that the deportation proceedings of appellant be reopened and that the prior order granting voluntary departure with the additional privilege of pre-examination be withdrawn. Hearing was held, at which appellant presented in evidence a decree of annulment entered in the Civil and Penal Tribunal of Ancona, Italy, on July 10, 1953, showing

2. Section 19(c) of the Immigration Act of 1917, 8 U.S.C.A. § 155(c) : "In the case of any alien * * * who is deportable under any law of the United States and who has proved good moral character for the preceding five years, the Attorney General may (1) permit such alien to depart the United States to any country of his choice at his own expense, in lieu of deportation, or (2) suspend deportation of such alien if not racially inadmissible or ineligible to naturalization in the United States if he finds that such deportation would result in serious economic detriment to a citizen or legally resident alien who is the spouse, parent, or minor child of such deportable alien. * * *" Now 8 U.S.C.A. § 1254(a) (1, 2).

3. 8 C.F.R. § 142 provides for preexamination of an alien " * * * for the purpose of determining in advance his admissibility into the United States for permanent residence when in possession of an unexpired immigration visa: * * *" 8 C.F.R. § 142.1.

8 C.F.R. § 142.2. "Preexamination shall not be authorized unless it appears to the officer granting such authorization that the alien is: (a) Admissible to Canada; (b) Of good moral character; * * * (d) Able to obtain the prompt issuance of an immigration visa in case it is determined that he is admissible to the United States for permanent residence."

8 C.F.R. § 142.7. " * * * preexamination will not be accorded * * * unless or until he * * * has received from the consular officer written assurance * * * that a visa will be promptly available * * *."

4. Acting on instructions from appellant, an attorney in Fabriano, Italy, began an annulment action. The matter came to trial in an appropriate court in Ancona, June 27, 1953. The person identified as Elly Martha Porg appeared and testified about the alleged marriage. A decree annulling the marriage was entered on June 27, 1953. Recitals contained in the decree show that the testimony of Elly Porg was to the effect that appellant was tricked and deceived into marriage on the pretext that he was signing papers to obtain food. At the time appellant had but recently escaped from a German prisoner of war camp, did not speak German, and was in hiding in Berlin, awaiting the opportunity to cross from the Soviet sector in Berlin into the American sector so that he might return to Italy.

the termination of his marriage to one Elly Martha Porg, contracted on September 4, 1945, in Berlin. Appellant stated the facts to be that he was given shelter by the family of Elly Porg after his escape from a German prisoner of war camp, that he did not speak German, that he did not intend to contract marriage, and believed he was signing documents which would permit the Porg family to obtain food and clothing rations. The Special Inquiry Officer found this to be "incredible," and decided that the appellant was ineligible for discretionary relief.[5] The appellant was ordered deported. On October 5, 1954, the Board of Immigration Appeals dismissed an appeal from this order of deportation.

Appellant later petitioned the United States District Court for a review of the administrative proceeding, under 5 U.S.C.A. § 1009, Section 10 of the Administrative Procedure Act. The petition alleged that appellant is and has been a person of good moral character, that he has resided in the United States with his United States citizen spouse continuously since their marriage on March 28, 1950, that appellant did not willfully conceal any prior existing marriage, that he had no knowledge of the alleged prior marriage, that the expressed opinions of the Special Inquiry Officer are contrary to the findings and conclusions of the Italian Court which granted a decree of annulment on the ground of fraud and concealment, that the decision is arbitrary, capricious and contrary to the evidence of record, that the decision is an abuse of discretion, and contrary to

the record, and that "* * * if the charges of the Special Inquiry Officer are permitted to stand, the plaintiff [appellant] will be forever barred from readmission to the United States; * *." The District Judge dismissed the petition on the ground that "* * * Under all the circumstances disclosed in the record, judicial intervention is not warranted." The instant appeal followed.

Appellant presents three specifications of error which deal with (1) sufficiency of the evidence; (2) fairness of the administrative hearing; and (3) refusal of the District Court to intervene.

We find no lack of fairness in the administrative proceedings in this case. We believe that the other alleged errors, if they are errors, are not errors that this Court can remedy. By appellant's own pleading he remained in the United States for a period of time in excess of that allowed by his visa, and for that reason he is deportable. Immigration Act of 1924, § 14, 8 U.S.C.A. § 214. Whether a deportable alien is to be permitted voluntarily to depart the United States, or whether deportation is to be suspended, is a matter within the discretion of the Attorney General. Immigration Act of 1917, § 19(c), 8 U.S.C.A. § 155(c). This Court may not interfere with exercise of that discretion. United States ex rel. Von Kleczkowski v. Watkins, D.C.S.D.N.Y.1947, 71 F. Supp. 429, 435; United States ex rel. Hintopoulos v. Shaughnessy, 1957, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652.

Despite the comments of the Special Inquiry Officer in his "discussion"[6] of

---

5. The Special Inquiry Officer found appellant's assertions of fact as to the alleged Berlin marriage "incredible" despite the fact that during the hearing appellant communicated by means of an interpreter so that the usual means of evaluating credibility were not available to the Special Inquiry Officer, despite the fact (as the Italian Court observed) that life in Berlin in the summer of 1945 was grim to an extreme, despite the fact that the Italian Court found the facts as told by appellant credible, and despite the fact that there was no evidence introduced

that conflicted with appellant's statement of the events in Berlin.

6. The "discussion" by the Special Inquiry Officer includes these comments: "The record in this case clearly indicates that the respondent attempted to obtain an immigration visa for admission to this country through fraud and that he carefully concealed from the authorities that he had been previously married * * *. I believe that this respondent was fully aware of his prior marriage and deliberately withheld such information from the authorities of this country even to the ex-

the case, we believe that the only issues before and the only issues determined by the Special Inquiry Officer during the administrative hearings in this case were the issues of appellant's deportability *and* eligibility for discretionary relief in the nature of voluntary departure from the United States. We are supported in the view that the Special Inquiry Officer was not determining the status of appellant to reenter the United States by the findings and conclusions made at the close of the reopened hearing. From these findings and conclusions, it is clear that the Special Inquiry Officer found appellant deportable by reason of over-staying the time limit in his visa, and made no determination as to his eligibility for reentry into the United States. Eligibility for reentry will be determined if and when appellant seeks reentry.

Appellant devotes a large part of his brief in this appeal to the argument that the judicial determination of the Italian Court that the appellant was deceived and had no knowledge of such marriage should be binding upon the administrative tribunals in this case. Cogent as this argument may be in the appropriate factual situation, we believe it is not material here. The issue before the Immigration authorities was not deception into and knowledge of the marriage but whether to permit *an admittedly deportable alien* to depart voluntarily from the United States, a matter wholly within the discretion of the Attorney General. Immigration Act of 1917, § 19(c), 8 U.S.C.A. § 155(c).

The judgment of the District Court is affirmed.

JAMES ALGER FEE, Circuit Judge (concurring).

There is too much ado about this foreigner who deliberately injected himself into this country in conscious violation of our law, married within a month, apparently to fend off deportation, and has maintained himself here in defiance of our government for almost five years.

Admittedly, he has been subject to lawful deportation during all this time, and is now. He has been consistently accorded due process of law. At his deportation hearing, the basis was found unquestioned for immediate action. He was granted suspension for a limited period in order to permit him to depart voluntarily[1] and to have pre-examination for readmission.[2] He has not departed voluntarily, and the time so limited, with all extensions, expired on July 20, 1953.

The reason Fugiani has not voluntarily departed in order to obtain permanent residence here is that, if he should leave, he could not get back. Pre-examination has not been had because a condition precedent to pre-examination is that he "has received from the consular officer written assurance * * * that a visa will be prompty available."[3] It is perfectly clear that the United States Consul at Vancouver, British Columbia, Canada, will not now issue such a visa promptly or at all.

The position of Fugiani is that the authorities of this country must accept his story and the decree of an Italian court, which he obtained ex parte, and admit him. But this is only a theory in which there are none of the constitutional points suggested.

The authorities acted strictly according to regulations in re-opening the proceedings to determine the proper exercise of discretionary relief.[4]

---

tent of committing perjury in his application for discretionary relief. This respondent has shown an utter disregard for the Immigration Laws of this country * * *."

1. 8 C.F.R. § 150.3 (1951 Supp.).

2. 8 C.F.R. § 150.3(c) (1951 Supp.).

3. 8 C.F.R. § 142.7(a) (1951 Supp.).

4. The effective regulations pursuant to which the hearing was reopened were 8 C.F.R. §§ 151.6, 151.7, 151.5(e) (1951 Supp.) and also 8 C.F.R. § 150.3(a) (1951 Supp.).

It was of no consequence what issues or questions the Special Inquiry Officer considered at the hearing. That official had the responsibility, in deciding whether the privilege of pre-examination would again be granted, to determine whether or not the applicant was of good moral character[5] and whether the latter could receive assurance from the consulate in Canada that an immigration visa would issue promptly when the alien presented himself there.[6] He determined these questions against Fugiani.

This alien is here in violation of our law. He was accorded the privilege of voluntary departure and pre-examination, which was discretionary. The limitation on this order allowing voluntary departure has long since expired. The officials reopened the hearing and denied further discretionary relief, and ordered him deported in accordance with regulation.

If this was not lawful procedure, an impasse has been created. Fugiani, however undesirable, will be a permanent resident of the United States. This result does not seem possible.

In passing upon the issue of good moral character pursuant to his jurisdiction under the statute and regulation, the Special Hearing Officer had a right to consider the fact that Fugiani had once gone through a form of marriage to get bread and that he failed to reveal that fact to the immigration officers. It was pertinent to consider that Fugiani married in haste while unlawfully in this country. This is a well known device. Both these circumstances could properly have been considered in determining whether to allow the pre-examination on a discretionary basis.

In the event that the Hearing Officer incidentally considered matters which might affect the right of the alien to re-enter, the answer is he necessarily entertained the two vital questions under the statute and regulations.

5. 8 C.F.R. § 142.2(b) (1949 ed.).

6. 8 C.F.R. § 142.2(d) (1949 ed.).

POPE, Circuit Judge (dissenting).

I do not see how this decision can stand in the face of McGrath v. Kristensen, 340 U.S. 162, 169–171, 71 S.Ct. 224, 226, 95 L.Ed. 173. I think the majority opinion fails to note just what it was that the Special Inquiry Officer and the Board of Immigration Appeals determined. The Special Inquiry Officer never got around to consider whether the discretionary power would or would not be exercised. Rather, his decision was that appellant was *ineligible* for suspension or voluntary departure, as a person not of good moral character. The Special Inquiry Officer's formal findings, labeled as such, refer to nothing but appellant's deportability. They do not even mention discretionary relief. If those findings were the only ones made here the decision would have to be set aside for failure to pass upon the question before the Special Inquiry Officer, namely, whether suspension or voluntary departure should be granted. To make the officer's decision meaningful, it must be read as a whole, including the opinion, where he said: "In view of all the facts and circumstances, I can only conclude that the respondent is wholly *ineligible* for any type of discretionary relief and should be deported and shall so order." (Emphasis mine.)

Indeed, the whole matter was reopened for the sole purpose of passing upon appellant's *eligibility*. The order read: "It is further ordered that the proceedings be reopened in order to determine the respondent's *eligibility for discretionary relief* in view of new and important evidence now contained in the file." (Emphasis mine) The Board of Immigration Appeals so read the decision when they affirmed it. Reference to their decision shows that they treated the Special Officer's opinion as the real decision.[1]

1. Interestingly, the majority opinion contains statements consistent with my view of what was decided. Says the majority,

Thus it is apparent that this case precisely parallels the Kristensen case, supra. There the question decided by the Attorney General was that the alien was *ineligible* for discretionary relief because he was not eligible for naturalization.[2] The Court said: "Where an official's authority to act depends upon the status of the person affected, in this case eligibility for citizenship, that status, when in dispute, may be determined by a declaratory judgment proceeding after the exhaustion of administrative remedies. Under § 19(c) of the Immigration Act the exercise of the Attorney General's appropriate discretion in suspending deportation is prohibited in the case of aliens ineligible for citizenship. The alien is determined to have a proscribed status by this administrative ruling of ineligibility. Since the administrative determination is final, the alien can remove the bar to consideration of suspension only by a judicial determination of his eligibility for citizenship. This is an actual controversy between the alien and immigration officials over the legal right of the alien to be considered for suspension. As such a controversy over federal laws, it is within the jurisdiction of federal courts, 28 U.S.C. § 1331, 28 U.S.C.A. § 1331, and the terms of the Declaratory Judgment Act, 28 U.S.C. § 2201, 28 U.S.C.A. § 2201."

If we substitute in the above quotation the words "eligibility for discretionary relief" for the words "eligibility for citizenship", we have this case precisely. Such a determination of status is reviewable for the reasons stated in Brownell v. We Shung, 352 U.S. 180, 185, 77 S.Ct. 252, 256, 1 L.Ed.2d 225: " 'Exemptions from the * * * Administrative Procedure Act are not lightly to be pre-sumed,' Marcello v. Bonds, 1955, 349 U.S. 302, 310, 75 S.Ct. 757, 762, 19 L.Ed. 1107, and unless made by clear language or supersedure the expanded mode of review granted by that Act cannot be modified."

It is manifest from the record here that there is plenty of room for different fact conclusions upon a review of the officer's decision. The explanation which the appellant gave for his ignorance of the marriage record was entirely understandable and it is confirmed by everything else in the record including the decree of the Italian court which in turn was based upon a confirmation of his story by the woman, Elly Porg, who appeared before that court to corroborate the appellant's account that the signature on the document which turned out to be a marriage contract and which was written in German which he did not understand, had been affixed by him with the understanding that it was an application for additional food rations. Out of the blue sky, and, it seems to me, without basis, the hearing officer pulled a finding that his story was incredible.

Personally, I would doubt that a trial judge on a review of this order would find the appellant's story incredible. More fantastic experiences of escaping soldiers during the late war have been checked and verified. At any rate, the purpose of the provision for review is to subject fact determinations as important as this one to review by a judge. That is what the Administrative Procedure Act is for.

I think the case should be remanded to the court below for the purpose of giving appellant the review of this finding to which he is entitled. If the trial court then finds appellant not ineligible for voluntary departure, the determina-

(10th paragraph of the opinion): " * * the only issues determined by the Special Inquiry Officer during the administrative hearings in this case were the issues of appellant's deportability and eligibility for discretionary relief. * * "

2. "Review was granted by this Court to determine whether the Attorney Gener-al was justified in refusing to suspend deportation of an alien under § 19(c) as amended, 62 Stat. 1206, of the Immigration Act of 1917, 39 Stat. 874, 889, 8 U.S.C. §§ 101, 155(c) on the sole ground that the alien was ineligible for naturalization." 340 U.S. at page 163, 71 S. Ct. at page 226.

tion of ineligibility must be set aside. As in the case of United States ex rel. Zacharias v. Shaughnessy, 2 Cir., 221 F. 2d 578, since appellant had initiated these proceedings, even before the 1952 Act, he would then be entitled to a new hearing for the exercise of discretion by the Board of Immigration Appeals.

I agree with what Judge Byrne said in Acosta v. Landon, D.C., 125 F.Supp. 434, 441: "In other words, according to the Board, whenever an alien is found to be deportable, suspension of deportation should not be granted if at his hearing the alien gave testimony contrary to what the administrative officials found to be true. The reasoning apparently is that a witness whose testimony is not accepted by the trier of fact is a perjurer and not a person of good moral character. Such reasoning is not only legally invalid, but it is contrary to the basic sense of fairness upon which our legal system is founded.

\* \* \* \* \* \*

"The courts may not suspend the deportation of a deportable alien as that discretionary power is vested solely in the Attorney General, 8 U.S.C.A. § 1254. However, when the Attorney General is required as a condition precedent to an order of deportation to exercise his discretion with respect to the suspension of deportation, the validity of the order must rest upon the needed exercise of discretion. If it is lacking, the order is ineffective." [3]

That case is interesting for another reason. It is an illustration of the manner in which district courts, reviewing orders of administrative bodies, properly reject the latters' findings when the court is satisfied that they are "unsupported by substantial evidence" within the meaning of Sec. 10(e) of the Administrative Procedure Act (Title 5 Sec. 1009 (e)).

Another case where a district judge substituted his own judgment on the facts was Bonica v. Olesen, D.C., 126 F. Supp. 398. Cf. Securities and Exchange Commission v. Cogan, 9 Cir., 201 F.2d 78, 86: "[W]e think it manifest that the district judge knew more about the subject in hand than did the Commission." See also, Jaffe, "Judicial Review: Questions of Fact," 69 Harv.L.Rev. 1020, at 1032: "It would seem that the purpose of the 'whole record' test is to limit the opportunity for transmuting a preconception into judgment by picking and choosing what will support that preconception and willfully ignoring whatever weighs against it. Thus, even on a credibility issue we should probably not tolerate the intuitive 'hunch' where the record evidence overwhelmingly points to the contrary. The 'hunch' may of course be honest and it may be right. But it may equally mask the sheer determination to

---

3. Said Judge Byrne: "It is difficult to understand how the inquiry officer could find that the deportation of this alien \* \* \* would not result in exceptional and extremely unusual hardship." (In Mar Gong v. Brownell, 9 Cir., 209 F.2d 448, 452, are listed cases in which this court under earlier acts has rejected fact findings of immigration authorities as "purely arbitrary.")

Indeed, if what Judge Byrne said is valid, then even if the Special Inquiry Officer had purported to exercise a discretion to deny voluntary departure, (I have shown he did not), a reviewing court could well conclude that a discretion exercised on these grounds was an arbitrary one,—an abuse of discretion. The suggestion of the majority that a court may never interfere with the exercise of discretion by the Attorney General is not good law. Thus in Wolf v. Boyd, 9 Cir., 238 F.2d 249, 254, 257, this court expressly recognized the power of a court to review even discretionary orders "when there has been a clear abuse of discretion", or where "the denial of discretionary relief was arbitrary". So, in United States ex rel. Hintopoulos v. Shaughnessy, 353 U.S. 72, 77 S.Ct. 618, 621, 1 L.Ed.2d 652, the court recognized this exceptional case when it said "Nor can we say that it was abuse of discretion to withhold relief in this case. \* \* \* "

If discretion had been exercised here, I would hold it arbitrary, and an abuse of discretion for the reasons stated by Judge Byrne. Such a decision is not called for here, for no discretion was ever exercised.

find a certain way, and thus substitute the will of a man for the 'reason' of law."

Deportation is serious business. It may result in the loss "of all that makes life worth living." Bridges v. Wixon, 326 U.S. 135; 147, 65 S.Ct. 1443, 1449, 89 L.Ed. 2103. And the man entitled to have a review in court should not be denied it.