MATTER OF TARABOCCHIA

In DEPORTATION Proceedings

A-7957351

*Decided by Board February 11, 1693*

An alien who entered the United States as a crewman is statutorily ineligible
for suspension of deportation under the provisions of section 244(f) of the
Immigration and Nationality Act, as amended by section 4, Act of October 24,
1962, notwithstanding he had pending on the effective date of the amendment
an application for suspension of deportation.

CHARGE:

Warrant: Act of 1924—Remained longer—crewman.

The case comes forward on appeal from the decision of the special
inquiry officer entered November 29, 1962, finding the respondent sub-
ject to deportation on the charge stated above; holding that he is not
eligible for the discretionary relief of suspension of deportation be-
cause he entered as a seaman or crewman; granting him the privilege
of voluntary departure and providing for an automatic order of de-
portation should he fail to depart; and further directing that if Aus-
tralia, the country the respondent designated as the place of deporta-
tion, is unwilling to accept the respondent, he should then be deported
to Italy.

The record relates to a 49-year-old married male alien, who was
born in Sansego, Italy, which later became Yugoslavia, and who is
presently stateless. His last and only entry into the United States oc-
curred at Newport News, Virginia, on February 27, 1951, "SS Brazil"
when he was admitted under section 3(5) of the Act of 1924 as a
seaman. He has since remained in the United States. The charge
of deportability is established.

The warrant of arrest was originally served on respondent on
October 10, 1952, and he was accorded a hearing on November 19,
1952. The special inquiry officer found him deportable as charged
in the warrant of arrest, denied the application for suspension of de-
portation inasmuch as the respondent at that time had resided in the
United States only two years, had no family ties in this country and

181

was not eligible for that form of discretionary relief. The special inquiry officer denied applications for voluntary departure and pre-examination or voluntary departure alone. On June 17, 1953, this Board dismissed the appeal from the decision of the hearing officer. On January 31, 1958, this Board dismissed a motion to reopen for the reason that the motion was unsupported by evidentiary data or points of law or precedents to support the motion to reopen for suspension of deportation under 8 U.S.C. 1254(a)(1) of the Immigration and Nationality Act of 1952 or, in the alternative for the purpose of pre-examination. On May 8, 1958, the Acting Regional Commissioner, Northeast Region, Burlington, Vermont denied respondent's application for stay of deportation pursuant to section 243(h) of the Immigration and Nationality Act for failure to establish that the applicant would be subjected to physical persecution if returned to the country to which his deportation was designated, to wit, Italy. On March 24, 1961, a motion requesting that the outstanding order of deportation be set aside and the proceedings be reopened to permit application for suspension of deportation under section 244(a)(5) of the Immigration and Nationality Act was denied for the reason that the motion was not properly supported. On March 1, 1962, this Board granted the motion to reopen to permit the respondent to apply for suspension of deportation.

On the issue of discretionary relief it has been established that the respondent has resided in the United States continuously since his entry on February 27, 1951, as a seaman. When he first made application for suspension of deportation under section 19(c)(2) of the Immigration Act of 1917 (8 U.S.C. 155) being on November 19, 1952, respondent was clearly ineligible because he had no close family ties in the United States who were dependent upon him for support and he had not been in this country for a period of seven years; nor did he possess those qualifications on December 24, 1952, the date the Immigration Act of 1917 was repealed.

The respondent's present application for suspension of deportation under section 244 of the Immigration and Nationality Act was made during the course of the reopened hearing on March 16, 1962. The hearings were concluded on May 23, 1962. The decision of the special inquiry officer was handed down on November 29, 1962. In the meantime there had been enacted on October 24, 1962, Public Law 87-885 (76 Stat. 1247). Section 4 of Public Law 87-885 amended section 244 of the Immigration and Nationality Act (8 U.S.C. 1254) by stream-lining or condensing the five subsections of section 244(a) into two subsections; and added paragraph (f) which provides that no provision of this section shall be applicable to an alien who (1) entered the United States as a crewman; * * *. The special inquiry officer

held that applications previously made under section 244(a)(1) through (5) prior to October 24, 1962, have not been preserved and that he was required to determine the respondent's application for suspension of deportation under section 244 as presently amended. Inasmuch as that section specifically provided that suspension of deportation should not be granted to an alien who entered the United States as a crewman which, by definition in section 101(a)(10) of the Act includes a seaman, and inasmuch as the respondent had entered the United States as a seaman, the special inquiry officer concluded he fell within this terminology and was barred from suspension of deportation.

Counsel for the respondent has filed a brief in which he contends that the amendment of section 244 by section 4 of Public Law 87–885 on October 24, 1962, was prospective in nature and applied only to future crewman arrivals and not to all persons in that category already in the United States; and that this respondent, who was already deportable, was not affected by the new Act. Counsel also argues that under the savings clause, section 405(a) of the Act, the present application for suspension of deportation as well as the one made before the effective date of the 1952 Act should be and are preserved and that the respondent should be found statutorily eligible for the relief of suspension of deportation. Counsel also states that the respondent, being statutorily eligible, should be granted the discretionary relief requested.

Public Law 87–885 approved October 24, 1962 (76 Stat. 1247) originated as Senate Bill S. 3361 to facilitate the entry of alien skilled specialists and certain relatives of United States citizens and for other purposes. The legislative history of the bill, as finally reported in the statement of the Managers on the part of the House, shows that agreement was reached by the Committee of Conference with regard to the House amendment numbered 1 to amend the language of section 4 of the Senate Bill to achieve the purpose envisioned by the Senate in a modified manner. As intended by the Senate, relief would have been granted to certain aliens physically present in the United States, but that under the language agreed to by the Committee of Conference, the granting of relief would be subject to Congressional review and it would be predicated on the showing of specified type and degree of personal hardship which might occur in the absence of such relief. The amended language specifically excluded the granting of relief to alien crewman (seaman and airman) and to persons who entered the United States under educational exchange programs.[1] In commenting

---

[1] 18 U.S.C. *Cong & Adm. News*, 5488–5489 (87th Cong. 2d Sess. November 5, 1962) : 108 Congressional Record 21981—Conference Report No. 2552 (daily ed. October 11, 1962).

on the Bill, Mr. Walter and Mr. Feighan stated that the basic principles of a sound immigration policy, in the continuous concern to preserve the integrity of the very important international educational exchange program, caused the conferees to exclude from the benefits of this legislation those aliens who entered the United States as crewmen or exchange visitors.[2] Mr. Mansfield commented that section 4 of the Bill, as agreed upon by the conferees, is in the nature of a substitute for the provisions contained in the Senate version of the Bill which would have permitted the Attorney General to create a record for permanent residence in the cases of certain aliens who entered the United States prior to October 24, 1952; that section 4 now provides a procedure within the framework of the suspension of deportation procedures presently contained in section 244 of the Immigration and Nationality Act, and that the aliens affected would be granted substantially the same relief that they would have received under the provisions of section 4 of the Senate version of the Bill, with a requirement that the action of the Attorney General in suspending deportation be reported to Congress for approval. Mr. Keating stated that the Conference version of section 244 has continuing future applicability to any alien who can satisfy either the 7- or the 10-year physical presence requirements in addition to other criteria for suspension of deportation.[3]

It is believed that the decision of the special inquiry officer should be affirmed for the reasons set forth in the case of *Fassilis, Cataldo* and *Fevola* v. *Esperdy*, 301 F. 2d 429 (2d Cir. March 12, 1962). In that case the aliens involved had entered the United States on January 29, 1960, January 14, 1956 and sometime prior to July 14, 1960, respectively, all of the aliens entering this country in the status of crewmen. The District Judge granted defendant's motion against *Fassilis* on two theories—first, that there was no abuse by the administrative officials of the discretion given by the statute; and, second, that the July 14, 1960 amendment to section 245 of the Immigration and Nationality Act that became law while the administrative appeal was pending precluded crewmen after that date from obtaining permanent residence status under that section.[4] On appeal, the Circuit Court stated that there was a statutory change between the filing of the appellants' applications and the ultimate administrative decision disposing of these applications. (The decision of the District Director as affirmed by the Regional Commissioner made no reference to the statutory change enacted on July 14, 1960, excluding crewmen from

---

[2] 108 Congressional Record 22153 (daily ed. October 12, 1962).
[3] Volume 108 Congressional Record 22169 (daily ed. October 13, 1962).
[4] 192 F. Supp. 884 (S.D.N.Y., 1961).

the benefits of adjustment of status under section 245(a) of the Immigration and Nationality Act.) The court pointed out that the amendment of July 14, 1960, was not being applied retroactively and that while the appellants' applications were still subject to administrative adjudication, the appellants had no established right to the future status that they were seeking to obtain by their applications, especially since the statute involved made the granting of such applications a matter wholly within the discretion of the Service. The court further stated that the aliens in that case had acquired no status prior to the amendment that they were deprived of by the amendment, for the status each of them sought the agency to award them was not acquirable until final administrative action upon their applications. The court noted, that although not determinative of the result, it was not without significance that when Congress amended section 245 of the Immigration and Nationality Act of 1952, to preclude its application to crewmen, it did not enact a savings clause (section 405(a)) to protect pending administrative proceedings as it had done when that Act was adopted. The court concluded that it affirmed the decisions of the District Director on the ground that the Commissioner was required by the new amendment to deny the applications and since the result reached by the Commissioner was one over which he had no discretion, it was unnecessary to decide whether he properly exercised the discretion which he erroneously believed himself to have.

We find the reasoning of the *Fassilis* case, *supra*, equally applicable to the circumstances of the case before us. Here, the respondent was still the subject of administrative adjudication and had not established any right to the future status he was seeking to obtain by his application. No savings clause was enacted as a part of the amendment of section 244 by the Act of October 24, 1962. The exclusion of relief under section 244 applies to crewmen and exchange visitors as the result of an announced public policy on the part of Congress. The same exclusion from the benefits of adjustment of status under section 245 of the Immigration Act of 1952 had previously been embodied in the amendment thereto by the Act of July 14, 1960, which likewise excluded alien crewmen from the benefits thereof. The law expresses a clear Congressional policy and intent to exclude alien crewmen from the benefits of the remedial legislation contained in sections 244 and 245 of the Immigration and Nationality Act. Inasmuch as in the case of suspension of deportation, a favorable order would still require a reference to Congress, it would appear incongruous to hold crewmen eligible for a benefit from which Congress has specifically prescribed their exclusion.[5]

---

[5] Cf. *U.S. ex rel. Hintopoulos et al.* v. *Shaughnessy*, 353 U.S. 72.

For the reasons set forth at length in the foregoing discussion, we concur in the opinion of the special inquiry officer that the respondent, who entered the United States as a crewman, is not eligible for adjustment of status under section 244(a) of the Immigration and Nationality Act because of the exclusion of crewmen from the benefits of that Act by the Act of October 24, 1962 (Public Law 87-885). The appeal will be dismissed.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.