**Anooshiravan NOORI–KHAJAVI,**
**Plaintiff,**

v.

**IMMIGRATION & NATURALIZATION**
**SERVICE, et al., Defendants.**

No. 82–160C(3).

United States District Court,
E. D. Missouri, E. D.

Sept. 29, 1982.

John C. Garavaglia, St. Louis, Mo., for plaintiff.

Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendants.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court for a decision on the merits of plaintiff's complaint following a hearing before the Court. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. After consideration of the testimony and exhibits introduced at the hearing, the parties' briefs, and the applicable law, the Court enters the following memorandum opinion which it adopts as its findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52(a).

The parties are generally in agreement as to the facts relevant to this proceeding. Plaintiff is a native and citizen of Iran. He arrived in this country on June 10, 1977, at John F. Kennedy airport in New York City. He presented a visitor's visa he had obtained from a United States consular officer in Kabul, Afghanistan. Plaintiff told the immigration officer at John F. Kennedy airport, however, that he wished to become a student in the United States. Because plaintiff was not in possession of a valid student visa he was denied admission to this country and was paroled into the United States pending an exclusion hearing.

On September 28, 1977, plaintiff's exclusion hearing was held in Dallas, Texas. The immigration judge ordered plaintiff excluded on the basis of evidence adduced at the hearing. Plaintiff appealed to the Board of Immigration Appeals, which on June 29, 1978, remanded plaintiff's case to the immigration judge and instructed him to make specific findings on several fact issues and to hear additional evidence plaintiff desired to introduce. Plaintiff, incidentally, was represented by counsel during the course of these proceedings. Plaintiff's rehearing before the immigration judge in Dallas took place on August 22, 1978. At this point, plaintiff withdrew his application for admission and agreed to depart the United States voluntarily by September 5, 1978.

Plaintiff, instead of departing the country, remained in the United States. He married a United States citizen on August 2, 1978, in Texas and was divorced from her in February, 1980. Plaintiff married his current wife, also a United States citizen, in March of 1980. Plaintiff's wife gave birth to a son in April, 1980. Plaintiff, who currently resides with his wife and child at his mother-in-law's house, filed an application for adjustment of status, pursuant to 8 U.S.C. § 1255, in July, 1980. This application was denied and plaintiff was again ordered to leave the country. Plaintiff's request for reconsideration of the denial of his application for adjustment of status was denied in January, 1982. Plaintiff filed this action in February, 1982, seeking a temporary restraining order to prevent the Immigration & Naturalization Service (INS)

from enforcing any deportation or exclusion order; plaintiff also sought preliminary and permanent injunctive relief. A temporary restraining order was granted and remains in effect pending the outcome of this action. Plaintiff's requests for preliminary and permanent injunctive relief were consolidated, came before the Court for a hearing, and are the subject of the instant memorandum.

Although plaintiff brings this action seeking injunctive relief, essentially he is asking this Court for judicial review of the INS decisions denying his application for adjustment of status. Those decisions, both in January, 1982, denied plaintiff's application on two bases. First, held George Geil, District Director of INS, plaintiff is ineligible for an adjustment of status because he was not paroled or admitted into the country, as required by 8 U.S.C. § 1255(a).[1] Second, concluded Mr. Geil, the circumstances of plaintiff's case do not warrant the statutorily permitted exercise of discretion to permit plaintiff to become a permanent resident of the United States. *Id.* Plaintiff in this action challenges both of these conclusions, and thus, two legal issues are presented to the Court in this action: first, did the District Director err, as a matter of law, in determining that plaintiff was ineligible for an adjustment of status; second, did the District Director commit an abuse of discretion in failing to accord plaintiff permanent resident status.

■ The Court first notes that the permissible scope of review in matters such as this is narrow. The INS decision can be overturned only if there has been an abuse of discretion, lack of procedural due process, or where a factual finding is not supported by substantial evidence. *Longoria-Castenada v. INS,* 548 F.2d 233, 235–36 (8th Cir.), *cert. denied,* 434 U.S. 853, 98 S.Ct. 169, 54

L.Ed.2d 123 (1977). As to plaintiff's first contention, that the District Director was wrong in his finding that plaintiff was statutorily ineligible for adjustment, the broader substantial evidence test applies. *Lee v. INS,* 541 F.2d 1383, 1384–85 (9th Cir. 1976). Plaintiff must clear the eligibility hurdle before the District Director may exercise his discretion and grant permanent resident status. *Id.* The Court must apply the more confined abuse of discretion test to plaintiff's second contention that the District Director improperly refused to exercise his discretion to grant plaintiff permanent resident status. *Id.*

The District Director in his opinions of January 8 and January 19, 1982, held that plaintiff was statutorily ineligible for adjustment of status because plaintiff was not then "admitted or paroled", 8 U.S.C. § 1255(a), into the United States. The District Director's decision rested upon an interpretation of § 1255(a) that requires an applicant to be a parolee at the time of his application.[2] Plaintiff first argues that this is an incorrect interpretation of the statute and that the statute allows one to be eligible for an adjustment of status so long as the applicant was at one time a parolee. Alternately, plaintiff argues that he was a parolee at the time of his application because he was never notified in writing of the termination of his parole as was formerly required by 8 C.F.R. § 212.5.

■ The Court holds that the District Director's interpretation of the statutory eligibility requirements in § 1255(a) is correct. While no cases appear to have considered this particular issue, plaintiff argues by analogy and on the basis of legislative history that the District Director's decision is incorrect.

1. The statute reads as follows:

    The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive

    an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

2. It is not argued in the instant action that plaintiff was ever admitted into the United States.

First, plaintiff argues that Congress' intent in passing amendments to the statute in 1958 and 1960 was to broaden the eligibility requirements. Plaintiff's citations from the legislative history, however, only support this general proposition and do not bear upon the specific issue here. Plaintiff also emphasizes comments in the legislative history of the 1960 amendments which demonstrate that Congress firmly intended to exclude from § 1255(a) eligibility those immigrants who had entered the country surreptitiously. Plaintiff argues that because he never entered the United States surreptitiously, an interpretation of § 1255(a) holding him to be eligible for adjustment of status would comport with congressional intent. Assuming, however, Congress' intent to exclude those who entered surreptitiously, plaintiff's argument misses the mark for he himself *remained* in this country surreptitiously between 1978 and 1980, contrary to his promise to INS.

Finally, plaintiff cites several cases, e.g., *Marino v. INS,* 537 F.2d 686 (2d Cir. 1976), holding that immigrants whose visas had expired are eligible for a § 1255(a) adjustment of status. The Court finds these cases inapposite, however, because plaintiffs in those cases had already been admitted to the United States. They had presented their credentials, subjected themselves to INS scrutiny, and had passed the INS requirements for admission. Parolees such as plaintiff, on the other hand, are not officially admitted into the country. In the instant matter, plaintiff was paroled in order that an INS hearing could be held on his request for admission and was found excludible. The INS, having passed on his request for admission, found him to be lacking the credentials for admission. Conversely, an overstaying immigrant who had originally been admitted has at least passed the initial hurdle for entry into the United States. Thus, there is a rational basis under § 1255(a) for distinguishing between a former parolee who failed to leave the country and a one-time possessor of a valid

visa who simply stayed in the United States too long.[3] *See, e.g., Shùng v. Murff,* 176 F.Supp. 253, 256 (S.D.N.Y.1959) (court discusses distinction between parolees and those immigrants actually admitted).

The Court also finds plaintiff's contention that he is still a valid parolee because he never received written notice of termination of parole without merit. The Court will abide by plaintiff's argument that 8 C.F.R. § 212.5, as formerly in effect, required written notice of termination of parole. The evidence adduced at the hearing in this matter, however, indicates that plaintiff did receive such notice on August 22, 1978. Joint Exhibit No. 1 at page 32. Thus, the Court holds that plaintiff is ineligible for adjustment of status under 8 U.S.C. § 1255(a).

Plaintiff in this action also seeks to have the District Director's decisions overturned on the basis that he improperly refused to exercise his discretion to grant plaintiff permanent resident status. Although the Court has already held that plaintiff was statutorily ineligible to apply for adjustment of status, plaintiff's contention regarding the District Director's exercise of discretion will be discussed as well.

■ Plaintiff's burden on this issue is a great one, for he must demonstrate that the District Director's decisions constituted an abuse of discretion. *Longoria-Castenada,* 548 F.2d at 235–36; *Lee,* 541 F.2d at 1384–85. Thus, the Court is not free to substitute its judgment for that of the District Director, and will overturn the District Director's decisions only if they are shown to be clearly arbitrary. *Hintopoulos v. Shaughnessy,* 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957).

■ The record demonstrates that the District Director weighed many factors in coming to his conclusion on the exercise of discretion issue. He considered the controversy raised at plaintiff's exclusion hearings regarding plaintiff's true intent when he

---

**3.** Plaintiff cites *In re MaliMali,* 264 F.Supp. 308 (D. Hawaii 1967), as an example of a case in which an out of status parolee was found eligi- ble for § 1255(a) relief. Plaintiff in that case, however, filed his application for adjustment while he was still on parole. *Id.* at 309.

came to this country, plaintiff's failure to abide by his promise to leave the country voluntarily, his two year out-of-status residence in this country, plaintiff's marriage to an American citizen, the existence of a child by this marriage, plaintiff's wife's health, and the financial circumstances of plaintiff and his family. Plaintiff argues that several minor misstatements of fact and mitigating factors indicate that the District Director abused his discretion.

First, plaintiff argues that several erroneous statements that exist in the District Director's decisions regarding dates and places indicate that a careful review of the record was not undertaken. None of these errors, however, is in any way significant to the outcome of plaintiff's case. The Court does not consider these to be indicia of an abuse of discretion.

Plaintiff argues that the health condition of his wife was ignored by the District Director and points to Dr. Linda Bock's testimony that plaintiff's wife might suffer a worsening of her depressive tendencies if plaintiff were to be excluded from this country as factors warranting reversal of the District Director's decision. The District Director, however, did discuss evidence presented on the health of plaintiff's wife, and the later testimony of Dr. Bock suggests that plaintiff's wife may suffer a worsening of her condition regardless of plaintiff's status in this country. Deposition of Dr. Linda Bock at 22. The Court believes that plaintiff's arguments fail to demonstrate an abuse of discretion on this issue.

Finally, plaintiff points to his marriage to an American citizen and argues that this special equity, considered together with plaintiff's American-born son, outweighs any evasion of the immigration laws that plaintiff has undertaken. Further, plaintiff disagrees with the District Director's findings on the issue of plaintiff's conduct towards INS. While it is true that "marriage . . . to an American citizen . . . is a potent factor favoring the exercise of discretion," it is also true that this may be outweighed "by unfavorable factors. . . ."

Gordon & Gordon, *Immigration Law and Procedure,* § 7.6(b).

The District Director, in his two decisions, relied on certain findings of fact regarding plaintiff's prior conduct in the immigration process, and the Court will not disturb these findings in this action. Further, the District Director weighed this "circumvent[ion] of the lawful immigration processes" against plaintiff's marriage and held that discretion should not be exercised in favor of plaintiff's application. Plaintiff and defendant have presented to the Court numerous immigration decisions that go both ways on issues of this nature. *Compare Matter of Tayeb,* 12 I.N. 739 (1968) (adverse factors outweighed marriage to U.S. citizen) *with Matter of Rafipour,* Int.Dec. No. 2640 (BIA 1977) (marriage outweighed adverse factors). These cases amply demonstrate that determinations such as these are made on a case by case basis, illustrating the need for judicial deference. In light of this, the Court is not prepared to overturn the District Director's decisions, absent a showing that the decisions are "clearly arbitrary." *Hintopoulos,* 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652. Plaintiff has failed to carry this burden here and thus, the Court upholds the District Director's determinations on the issue of exercise of discretion.

In summary, the Court holds that the District Director's two decisions of January, 1982, denying plaintiff's application for adjustment of status must be upheld. First, the District Director's conclusion that plaintiff is statutorily ineligible for adjustment of status under 8 U.S.C. § 1255(a) is not incorrect as a matter of law. Second, plaintiff has failed to demonstrate that the District Director's finding that plaintiff's circumstances did not warrant the exercise of discretion favoring plaintiff's application constituted an abuse of discretion.