**Application of Sione Halaapiapi MALI-MALI, For a Writ of Habeas Corpus.**

**H. C. No. 386.**

United States District Court
D. Hawaii.
Feb. 3, 1967.

Robert Won Bae Chang, Hoddick, Rothwell & Chang, Honolulu, Hawaii, for petitioner.

Yoshimi Hayashi, Asst. U. S. Atty., Herman T. F. Lum, U. S. Atty., District of Hawaii, for respondent.

### DECISION

TAVARES, District Judge.

Petitioner, Sione H. Malimali, a native and citizen of Tonga, arrived in the United States (Honolulu) on October 5, 1963, seeking admission into this country as a nonimmigrant student under 8 U.S.C. § 1101(a) (15) (F). Upon his arrival he was paroled into the United States pursuant to 8 U.S.C. § 1182(d) (5) for the purpose of determining his admissibility as a student.

The Immigration and Naturalization Service (hereinafter called the Service) has since, after numerous hearings, excluded him on the ground that he was not, at the time he applied for admission, a bona fide nonimmigrant student.

On February 6, 1964, before any final hearing on the matter of his eligibility to enter the United States as a student, the petitioner submitted an application to the Service for change of status from that of a nonimmigrant student, to that of an alien admitted for permanent residence under 8 U.S.C. § 1255.

This application for change of status has also been denied by the Service.

The Court has carefully examined the entire record and all exhibits, including transcripts of the proceedings before the Service, and briefs submitted in connection with this matter, and has given due consideration to the points of law raised by the parties, and the stipulation of facts.

It will serve no useful purpose to recite all of the complicated facts, circumstances and happenings shown by the record, involving, among other things, the activities of the Service, including those of the Board of Immigration Appeals, and the alleged acts of the State Department with respect to the status of Tonga for immigration quota purposes and the availability of immigration visas, which read like a comedy of errors. Nor will it serve any purpose for this Court to discuss a number of peripheral questions of law as to the proper construction of the statutes and regulations applicable in this case, as these questions seem immaterial in the light of the facts and the final action of the Service as the same now appear in the record.

A few days after his arrival in the United States, petitioner registered as a part-time student only—for three hours a night—at the Hawaiian Baptist Academy, which his papers indicated he had intended to attend with the stated educational objective of studying English. He attended these classes from October 14 to November 23, 1963, at which time he ceased to attend.

Thereafter he joined a class in practical carpentry in another organization not named in his original papers, for a short time, and since then has been

employed in Honolulu, and has not attended any further classes.

The petitioner complains that his reasons for failing to attend longer at the Hawaiian Baptist Academy, for thereafter changing to the practical course in carpentry, and for thereafter ceasing to attend any school and for being employed, were caused by information given him by officials of the Service, and therefore should not be used against him.

■ Assuming, without deciding, that this complaint is well taken, this Court believes and finds that other undisputed evidence before the Service, namely:

(a) the fact that he registered only as a part-time student initially and for night school, at the Hawaiian Baptist Academy;

(b) that he had told the consular officials in Pago Pago that he was seeking admission to the United States to study medicine;

(c) that his certificate as to the course of study he intended to pursue (Form I–20A), however, stated he was to study English;

(d) that his sponsor withdrew within five weeks after he arrived in the United States (Honolulu);

(e) that he expected to live in Honolulu with his brother-in-law who was employed as a casket maker, about whose salary and resources he was uninformed, who was married and had three other dependents, and who he did not believe would be willing to support him through a medical course;

(f) that he did not know the requirements for a medical course either by way of curriculum or estimated expenses;

(g) that he started out from Pago Pago with only $500.00 and had to pay about $148.00 in fare to Honolulu;

(h) various other circumstances indicating the nebulous nature of his educational plans and the inadequacy of the resources that he had estimated or made arrangements for, plus the fact that he spoke English so poorly, apparently, that he had to speak through an interpreter; and

(i) that he applied for change of status within five months after his being paroled into the United States,

is sufficient to support the findings by the Service as to the lack of bona fides of his nonimmigrant student application, so that this Court cannot say that such finding is arbitrary or capricious.

It thus suffices to say that, after several previous habeas corpus petitions had been filed and voluntarily dismissed without prejudice upon the agreement of the Service to reopen the matter or consider or reconsider its findings and actions and various claims or contentions of petitioner, the petitioner was eventually afforded, in the aggregate a hearing or hearings upon all material questions, including: (a) that of whether or not the petitioner should be excluded as not having sought admission as a bona fide student nonimmigrant, and (b) that of whether or not the Attorney General should, in the exercise of his discretion under 8 U.S.C. § 1255, grant a change of status from that of a nonimmigrant student (or of whatever other status he may have had) to that of an alien admitted for permanent residence; and that the conclusions were reached by the Service: (1) that the petitioner was not eligible for entry into the United States as a nonimmigrant student, and therefore was excluded; and (2) that he was denied any such change of status by the Attorney General under his discretionary power.

The District Director of the Service testified, among other things, in this court, that, in order to call for the exercise of discretion by the Attorney General (under 8 U.S.C. § 1255) as to whether or not to grant a change of status from that of a nonimmigrant to that of an alien lawfully admitted for permanent residence, there must be an immigrant visa immediately available to him (which, as this Court understands his testimony, he explained to mean that there must be a quota number immediately available

for such person), and that there was no such number available to petitioner, and therefore no immigrant visa. There is no evidence in the record to contradict this testimony or the finding of the Service that no such visa or quota number was immediately available. Nor have any laws, regulations or facts of which this Court can take judicial notice been presented to this Court which would demonstrate that those findings are wrong.

The District Director further testified that, even if a quota number (and hence an immigrant visa) were available, he would deny the change of status as a representative of the Attorney General on the ground that such change was not merited, because of the "circuity" of petitioner's entry, by which he meant that, despite the testimony of petitioner, it was the Director's conviction that petitioner was not a bona fide student but merely came to the United States to find employment.

Under the ruling in Cakmar v. Hoy, 9 Cir. 1959, 265 F.2d 59, 62, it would seem doubtful, to say the least, whether formal hearing by the Service is required upon the question of whether the Attorney General's discretion shall or shall not be exercised to grant a change of status under 8 U.S.C., § 1255. However, in this case, there was an ample hearing and an unequivocal ruling was made denying such discretionary relief based upon reasonable and legally supportable grounds.

 Assuming that arbitrary and capricious action by the Attorney General, or by his delegated agents, is subject to court review on habeas corpus (*Cakmar,* supra), this Court cannot say, upon the facts in the record or the testimony adduced at the hearing before this Court, or both, that the findings of the Service denying, or in support of the denial of, such change of status, and the order of exclusion based thereon, are not supported by the evidence or are so arbitrary or capricious as to deny him procedural due process.

 The unavailability of an immigrant visa so found by the Service—as to which there is not a scintilla of evidence to the contrary—is sufficient to justify the action of the Service in refusing to grant a change of status, 8 U.S.C., § 1255(a). It is unnecessary, therefore, to consider whether the District Director's statement in this Court—e. g., that even if a quota number were available, he would deny the change of status for lack of merit because of the circuity of action of the petitioner—is sufficient to justify his refusal to grant the discretionary change of status. However, if he had so expressly found in the proceedings preceding this habeas corpus action, this Court believes such a finding would not, on the facts in the record, be so arbitrary or capricious as to deny procedural due process.

The petition for a Writ of Habeas Corpus is therefore dismissed.