Ofelia M. RAMIREZ, Plaintiff,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Defendant.

No. 71 C 1613.

United States District Court,
N. D. Illinois, E. D.

Jan. 21, 1972.

Richard Lowery, Shapiro & Small, Chicago, Ill., for plaintiff.

James Thompson, U. S. Atty., James K. Toohey, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

Motion for Summary Judgment

MAROVITZ, District Judge.

Plaintiff is a citizen of the Philippines who is challenging a directive of the Immigration and Naturalization Service ordering her to depart the United States. In order to understand her present status and her assertions the history of her presence in this country from the time of her arrival must be traced.

On June 22, 1968, Ofelia Ramirez arrived from Manila, Philippines at Seattle, Washington as a non-immigrant visitor for pleasure with permission to stay in the United States until December 21, 1968. On July 17, 1968 she submitted an updated application for a Third Preference immigrant status to the District Director at Norfolk, Virginia on the basis that she held a teaching position in the Philippines and that she therefore qualified under the Third Preference requirement that the petitioner be a member of the professions. On September 19, 1968 her application for a Third Preference was denied by the United States Employment Service on the .grounds that she had insufficient training and education to qualify for certification as a member of the teaching profession in the United States.

On December 16, 1968 the Plaintiff requested an extension of her non-immigrant visitor's visa to March 30, 1969 on the basis that her husband was on an extended business trip in the United States and that she therefore wanted to stay with him and that in addition she was undergoing treatment at the Mayo Clinic. The extension was granted.

On March 26, 1969 she requested a further extension to September 30, 1969 for the same reasons set forth in her earlier request. This extension was also allowed.

On May 5, 1969 the Immigration and Naturalization Service in Washington, D.C. denied Plaintiff's application for a Third Preference classification on the same basis as had the United States Employment Service.

On September 29, 1969 she applied for an extension of her visitor's visa to March 31, 1970 for the same reasons set forth in her two prior requests for extension. This third request was granted. On March 17, 1970 she applied for yet another extension of her non-immigrant tourist visa in order to continue to remain with her husband and also to spend the spring and summer months vacationing and undergoing physical treatment with her cousin Dr. Arive. This request was also granted.

On September 25, 1970 the Plaintiff applied for a change of non-immigrant status from that of tourist to that of student to extend until June of 1971. On February 19, 1971 her application was denied. On March 2, 1971 she was notified by the District Director of the Immigration and Naturalization Service that her change of status to student had been denied because she had failed to comply with non-immigrant regulations in that she had accepted employment and had failed to maintain her status as a bona fide non-immigrant by reason of her having become a declared immigrant with the intention of remaining in the United States permanently while awaiting the availability of a visa number. Plaintiff appealed the decision and the appeal was denied by the Regional Commissioner of the Immigration and Naturalization Service on June 2, 1971. Pursuant to the expiration of her tourist

visa and her failure to obtain student status she was notified that she had until July 7, 1971 to depart from the United States.

On July 6, 1971 the Plaintiff filed a Complaint in this action seeking to have the orders of the Immigration and Naturalization Service by which she was denied non-immigrant student status and by which she was directed to depart from the United States reviewed on the grounds that the District Director and the Regional Commissioner had abused their discretionary power and had violated her right to due process. She also challenges, as an abuse of discretion and a violation of her equal protection rights, the Immigration Service's practice of allowing First, Second, Third and Fourth Preference holders to remain in the United States pending the granting of their visas while Fifth Preference holders from the Philippines, such as Plaintiff are required to await their visa numbers in their native country. [The First through Seventh Preferences are listed at 8 U.S.C. § 1153(a) (1) through (7) respectively. The First, Second, Fourth and Fifth Preferences allot a certain number of preferential visas to relatives of United States Citizens. The Fifth Preference which Plaintiff claims, is based on the petition filed by her sister, who is a United States citizen. She has since died, a critical factor which will be discussed *infra.*]

■ There are three conceivable alternatives, in Plaintiff's situation, that would justify her remaining in this country. The first would be an extension of her non-immigrant visitor for pleasure status. That avenue is presently foreclosed. It cannot be denied that the Immigration Service has been more than liberal in extending her visitor's visa on numerous occasions and that it is totally within their discretion to refuse to further extend such a visa. Quite plainly, absent other considerations, the Plaintiff could not contest the Service's authority to order her to leave. See Philippides v. Day, 283 U.S. 48, 51 S.Ct. 358, 75 L.Ed. 833 (1931); Si v. Boyd, 243

F.2d 203 (9th Cir. 1957); Fugiani v. Barber, 261 F.2d 709 (9th Cir. 1958). See also 8 U.S.C. §§ 1251(a) (2) and (a) (9).

■ The second alternative would be the granting of a change of Plaintiff's status from that of non-immigrant tourist to that of student. Plaintiff applied for this change on September 25, 1970 and her application was denied on February 19, 1971 based on the grounds that an alien must have maintained a lawful non-immigrant status to be eligible for a change from one type of non-immigrant status, such as tourist, to another type of non-immigrant status, such as student. Plaintiff had failed to maintain her non-immigrant status primarily because she had been unlawfully employed and because she was no longer a bona fide non-immigrant in that since her admission to the United States she had become an immigrant with the declared intention of remaining in the United States. Plaintiff now seeks relief from that administrative decision claiming that the refusal of the Immigration Service to grant her a change of status from tourist to student was an abuse of discretion. The only power of review in immigration cases that this Court has is limited to the determination of whether the District Director or the Regional Commissioner have abused their discretion in ordering the Plaintiff to leave the United States. Song Jook Suh v. Rosenberg, 437 F.2d 1098 (9th Cir. 1971); Pizarro v. District Director of United States Immigration and Naturalization Service, 415 F.2d 481 (9th Cir. 1969). This Court discussed, at great length, the criteria used to determine abuse of discretion especially in Third Preference cases in the recent case of Javier v. Immigration and Naturalization Service, 335 F.Supp. 1391 (N.D.Ill.1971).

■ In the case now before us Plaintiff undeniably violated a cardinal prohibition regarding the maintenance of lawful non-immigrant tourist status by accepting employment. (This ground alone is sufficient basis for a refusal to change non-immigrant status; all the

more so in view of the other violations attributed to Plaintiff.) She claims that the violation was merely "technical" and that she simply sought to earn some additional funds to help defray the cost of her studies if and when she returned to school and that she merely was attempting to put her time to good use. Her purpose may have been laudable but good intentions do not exculpate her from violating a fundamental condition of her retaining non-immigrant status. Furthermore her desire to return to school, at least as it appears from the record, seems to have been less than enthusiastic. It would indeed be an abuse of our review powers to find an abuse of discretion in the District Director's and the Regional Commissioner's denial of the change in status from tourist to student given the clear and uncontroverted violation of the conditions of her stay. She violated the law, the Immigration Service refused to excuse her violation and denied her change of status. There is not a shred of power in this Court to question that decision given the clear grounds for the refusal. Attorney for the Plaintiff himself admits that in view of the fact that the Plaintiff "became employed and therefore technically violated her visitor's visa, [i]t would be very difficult to argue that the District Director abused his discretion in denying that application". (Reply to Answer of Defendant, pp. 7–8.)

We therefore hold that the denial of change in status from non-immigrant tourist to non-immigrant student was not an abuse of discretion and that the Plaintiff's tourist visa having expired, the order requiring her to leave the United States was legal and proper.

█ Plaintiff, however, raises another issue, the third of the alternatives mentioned earlier. She argues that she should be permitted to remain in this country as a Fifth Preference holder on the basis of the petition filed in her behalf by her sister, until her number is reached. It has been the practice of the Immigration Service to allow some preference holders, such as Third Preference holders, to remain in the United States, while others such as Fifth Preference holders from the Philippines must wait until their number is reached in their native country. Plaintiff complains that this uneven application of the law is a violation of her equal protection rights. Both factually and legally Plaintiff's contentions are without merit.

We need not speak to the issue of whether an alien has equal protection rights in addition to due process protection, an issue that would most likely be decided against Plaintiff, since there are sufficient grounds to decide this portion of the Complaint even conceding an alien's right to invoke an equal protection argument.

The short answer to her contentions is that she lacks standing to raise Fifth Preference constitutional questions, whatever they may be, given the fact that her Fifth Preference status is no longer valid. The Fifth Preference, 8 U.S.C. § 1153(a) (5) allocates a certain number of visas outside the stream of general quota limitations for brothers or sisters of United States citizens. Like the First, Second and Fourth Preferences the concept behind the according of this preferential treatment is the preservation and promotion of family unity by permitting aliens to join relatives in the United States. The petition in this case was filed by Plaintiff's sister who has since died and the death of either the petitioner or beneficiary of a preference based on relationship automatically revokes the preference.

In 8 C.F.R. § 204.4 it is stated:

§ 204.4 Validity of approved petitions. (a) Relative petitioners. The approval of a petition to classify an alien as a preference immigrant under section 203(a) (1), (2), (4), or *(5)* of the Act, or as an immediate relative under section 201(b) of the Act, *shall remain valid for the duration of the relationship of the petitioner, and status, as established in the petition.* (Emphasis added.)

8 C.F.R. § 205.1 further indicates:

§ 205.1 Automatic Revocation.

The approval of a petition made under section 204 of the Act and in accordance with Part 204 of this chapter is revoked as of the date of approval if any of the following circumstances occur before the beneficiary's journey to the U.S. commences or, if the beneficiary is an applicant for adjustment of status to that of permanent resident, before the decision on his application becomes final:

> (a) Relative petitions. (1) Upon formal notice of withdrawal filed by the petitioner with the officer who approved the petition. (2) *Upon the death of the petitioner or beneficiary.* (Emphasis added.)

Thus it is perfectly clear from these regulations that all relative petitions, including Fifth Preference petitions are automatically revoked when the petitioning relative dies. Plaintiff therefore no longer holds a valid Fifth Preference in view of the fact that her petitioning sister has died. These regulations regarding automatic revocation are perfectly consistent with the underlying reasons for relative petitions, the promotion of family unity, since the death of a petitioning family member who was to be joined removes any reason for preferential consideration.

Plaintiff's attorney recognized the possibility of the invalidity of her Fifth Preference petition in his appeal to the Regional Commissioner regarding the District Director's refusal to grant Plaintiff's request of a change in status from tourist to student, when he stated "Furthermore, her citizen sister who sponsored her recently passed away and the petition may now be invalid." (Appeal to Regional Commissioner). The attorney's suspicions were entirely accurate at that time although he now seeks to differentiate between the revocation of relative petitions based on husband-wife relationship and Fifth Preference sister relationship. The regulation regarding revocation and its reasoning is as applicable to the Fifth Preference as to any other relative preference and Plaintiff no longer holds the latter preference. She therefore has no standing to challenge the constitutionality of the requirement that a Fifth Preference holder await his or her number in their native country.

Furthermore, even if we were by some stretch of the imagination to confer standing on the Plaintiff her arguments as to the denial of equal protection would fail on the merits. The decision that Fifth Preference holders from the Philippines must await their visa numbers in the Philippines was perfectly within the discretionary power of the District Director and Immigration officials given the considerations involved. Third Preference petitioners are permitted to await their numbers in the United States because their wait is in the vicinity of two years and the decision was made that it would be more beneficial for all parties to permit that wait to take place in the United States. The waiting period for Fifth Preference holders from the Philippines is, however, more than ten years due to the oversubscription of that class, (Plaintiff admits that visas under that preference may never become available) and the District Director, quite understandably, found it preferable to require holders of preferences for such a great duration and of such dubious chance of success to await their visa numbers in their native land. Thus even if Plaintiff would have standing to challenge the procedure the Immigration Service's practices would stand up under any equal protection scrutiny given the perfectly valid basis for the rules.

In summary, then, the change of status from non-immigrant tourist to non-immigrant student was properly denied by the District Director because Plaintiff violated the terms of her status by being employed and by changing her status from non-immigrant to declared immigrant and we can find no abuse of discretion in that decision; her tourist visa not being extended and her change to student not being granted the departure order was valid; her Fifth Preference petition is now invalid in view of the

death of her sister and even if it was valid she would still be required to await her number in the Philippines since there is no equal protection violation in the requirement that she do so. Thus under any conceivable alternative Plaintiff has no right to remain in the United States and must depart as ordered.

United States citizenship is one of the most prized and valued commodities in the world and this value is reflected in the great effort and energy that some individuals, such as Plaintiff, will expend to gain the privilege of that citizenship. It is therefore one of the more unpleasant tasks of this Court to deny petitions for review of immigration cases where that denial leads to the ordered departure of an aspiring citizen. Predeliction and preference aside, this Court is bound by the power of review permitted it in immigration and naturalization cases, a power whose scope is limited to the determination of abuse of discretion.

Having found no such abuse and having found no violation of Plaintiff's constitutional rights we affirm the order of the Immigration and Naturalization Service and the Government's Motion for Summary Judgment is granted.